466 A.2d 1009

COMMONWEALTH of Pennsylvania, Appellant,

v.

Joseph CROWLEY, Appellee.

Supreme Court of Pennsylvania.

Submitted April 19, 1983.

Decided Oct. 18, 1983.

Ronald T. Williamson, Chief, Appeals Div., Joseph Hylan, Norristown, for appellant.

Douglas M. Johnson, Chief Appeals Div., Francis Walsh, Norristown, for appellee.

Before NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

█ This is the Commonwealth's appeal from an opinion and order of Superior Court discharging appellee, Joseph Crowley, because his Pa.R.Crim.P. 1100 rights were violated and his trial counsel was ineffective for failing to protect those rights. Superior Court held that the Pa.R.Crim.P. 1100(c) extension Common Pleas granted the Commonwealth was unjustified because it failed to establish unavoidable judicial delay under *Commonwealth v. Mayfield,* 469 Pa. 214, 364 A.2d 1345 (1976), and because it did not ascertain whether Pa.R.Crim.P. 1100 could be complied with by moving the case ahead of others. For the reasons which follow we hold that *Commonwealth v. Mayfield* does not require the Commonwealth to exhaust the possibility of rearranging overcrowded dockets to accommodate the Rule 1100 run dates regardless of that rearrangement's effect on other matters. We therefore reverse the order of the Superior Court.

Following a non-jury trial, Montgomery County Common Pleas Judge Milton Moss found appellee guilty of possession of instruments of escape while in prison and sentenced him to six months to two years in prison, consecutive to a sentence he was then serving. Represented by new counsel on direct appeal, appellee claimed that trial counsel was

ineffective for failing to protect his Rule 1100 rights. Superior Court remanded the case for an evidentiary hearing to determine if trial counsel had a reasonable basis for failing to object to the Commonwealth's petition. Superior Court directed that if Common Pleas determined that counsel had no reasonable basis for failing to object and if the objection would have had arguable merit, it should hold a hearing to determine if it should have granted the extension. Then if it determined the petition should not have been granted, Superior Court directed Common Pleas to discharge appellee. *Commonwealth v. Crowley,* 259 Pa.Superior Ct. 204, 213–214, 393 A.2d 789, 793 (1978). On remand, following an evidentiary hearing, Common Pleas reluctantly determined that trial counsel had failed to file an answer to the petition because of his inattention or oversight.[1]

At the evidentiary hearing on trial counsel's ineffectiveness the trial court also heard testimony on the merits of the Commonwealth's petition for an extension of time. The Commonwealth established that the criminal complaint was filed on July 21, 1976. Thus, the one hundred eightieth day from that date was January 17, 1977. Following appellee's arraignment on October 12, 1976, the Commonwealth listed his case for trial for November 8, 1976. When his case was not reached on that date, the assignment clerk placed it on a "standby basis" for pending cases. It was placed underneath the pending cases assigned to Mr. Dunbar, the assistant district attorney assigned to appellee's case, with list dates prior to November 8.

As soon as Mr. Dunbar would finish one trial or guilty plea the case at the top of the pending list was pulled and assigned to the next available courtroom. Thus, the backlogged pending cases were assigned to courtrooms in chronological order beginning with the cases with the oldest list dates unless a case had to be rescheduled because of a

1. At the evidentiary hearing trial counsel said he had evidently been served with a copy of the Commonwealth's petition but perhaps because his secretary had quit her job and his papers consequently were not attended to, he had failed to file an answer. T.C. slip op. at 2 (June 7, 1979).

defense attorney's scheduling conflict.[2] Following this procedure, appellee was tried on February 8, 1977, twenty-two days after the original 180 day period had expired.

At the evidentiary hearing on trial counsel's effectiveness, the criminal assignment clerk stated Montgomery County Common Pleas had no provision for changing the order of cases for Rule 1100 purposes. Nevertheless, during the eleven week period from the listing of the case as ready and the original Rule 1100 run date, January 17, 1976, a substantial number of Montgomery County Common Pleas judges were available to try criminal cases except for a two week period. The criminal trial assignment clerk for the Court Administrator's Office testified that during those two weeks, trials were not held because a one week argument court and an "open week" were scheduled instead. The full criminal division of four trial judges and one list judge was available for six weeks and two trial judges and one list judge were available for three weeks. From January 17, 1976 until trial began on February 8, 1977, the full criminal division was also available. These figures reflect a diligent effort to reduce the October 31, 1976 inventory of 1299 untried criminal cases in Montgomery County of which 824 were ready for trial. N.T. at 23 (December 11, 1978).

Common Pleas determined that once the Commonwealth listed the case for trial it moved up the board in order as rapidly as possible in consideration of trials, guilty pleas, ARD's and nolle prosses. Therefore, it held that a timely defense opposition to the Commonwealth's petition for an extension would have had no basis and Common Pleas properly granted the Commonwealth's petition. On appeal, the Superior Court panel determined that the Commonwealth failed to establish that the "judicial delay" could not have been avoided as required by *Commonwealth v. Mayfield, supra. Commonwealth v. Crowley,* 281 Pa.Superior Ct. 26, 421 A.2d 1129 (1980).

**2.** The practice of placing continued cases at the head of the list on a later date is recommended by the American Bar Association Project on Standards for Criminal Justice, Standards Relating to Speedy Trial, Commentary § 2.3(a) at n. 4.

In *Commonwealth v. Shelton,* 469 Pa. 8, 364 A.2d 694, 699 (1976), this Court first stated in a dictum that judicial delay may justify the granting of an application for an extension of time when "the Commonwealth is prepared to commence trial prior to the expiration of the mandatory period but the Court because of scheduling difficulties or the like is unavailable." In *Mayfield,* this Court, again in a dictum, stated that if a delay beyond the prescribed period for trial is due to the judiciary, the record must show the causes of judicial delay and the reasons why it is unavoidable. This Court cited favorably two general principles governing the trial docket to avoid undue delay: (1) trial of criminal cases before civil cases and (2) in general, trial of jailed defendants before defendants on bail.[3]

In reviewing Superior Court's interpretation of our *Mayfield* decision and its application to this case it is useful to recite the purpose of Rule 1100.[4] We adopted Rule 1100

**3.** In *Mayfield* the prosecution was prepared to try the defendant within 180 days. Nevertheless he could not be tried within 180 days because of the backlog of cases. This Court held there was nothing in the record to indicate that the cause of the delay was lack of due diligence on the part of the Court and trial began within a few days of expiration of the 180 day period. The *Mayfield* court failed, however, to explain why the delay could not have been avoided.

**4.** At the time the complaint was filed in this case Rule 1100 stated, *inter alia:*

(2) Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed.

. . . .

(c) At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial. Such application shall be granted only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth.

On October 22, 1981, effective January 1, 1982, we amended the rule, adding subsection (c)(3) which provides:

(c)(3) Such motion shall set forth facts in support thereof, and shall be granted only upon findings based upon a record showing that trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth and, if the delay is due to the court's inability to try the defendant within the prescribed

pursuant to our supervisory powers to reduce the backlog of criminal cases in Common Pleas and to provide an objective standard for protection of defendant's speedy trial rights. *Commonwealth v. Mayfield,* 469 Pa. at 217, 364 A.2d at 1347; *Commonwealth v. Hamilton,* 449 Pa. 297, 297 A.2d 127 (1972).[5]

> Rule 1100 "serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society." *Commonwealth v. Brocklehurst,* 491 Pa. 151 [153–54], 420 A.2d 385, 387 (1980); *Commonwealth v. Hamilton,* 449 Pa. 297, 297 A.2d 127 (1972). In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. *Commonwealth v. Johnson,* 487 Pa. 197 n. 4, 409 A.2d 308 n. 4 (1980). The administrative mandate of Rule 1100 certainly was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

*Commonwealth v. Genovese,* 493 Pa. 65, 69–70, 425 A.2d 367, 369–70 (1981). The public, however, has an important "interest in having the guilt or innocence of the accused determined. Indeed, the criminal justice system owes society the duty not to abort trials, but rather to conduct proceedings

> period, upon findings based upon a record showing the causes of the delay and the reasons why the delay cannot be avoided.

5. In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court held that it is impossible to determine with precision when a state has denied a defendant's Sixth Amendment right to a speedy trial. The *Barker* Court identified four factors to be considered in determining a Sixth Amendment speedy trial violation: (1) length of delay; (2) reason for delay; (3) defendant's assertion of his rights; and (4) prejudice to the defendant. The standards of Rule 1100 have reduced the need for defendants to revert to the somewhat ambiguous constitutional right to a speedy trial. However, it has prompted much litigation over the precise meaning of its terms. It is indeed ironic that such a substantial amount of judicial resources must now be devoted to the myriad of hearings on petitions for extensions of time and motions to dismiss filed under the rule thus further clogging already overcrowded dockets.

expeditiously." *The Pennsylvania Prompt Trial Rule: Is the Remedy Worse than the Disease?*, 81 Dick.L.Rev. 237 (1977). In this Commonwealth the remedy for non-compliance with Rule 1100 inflicts severe societal costs, specifically dismissal of outstanding charges with prejudice. *See Constitutional Rights to a Speedy Trial: The Element of Prejudice and the Burden of Proof*, 44 Temple L.Q. 310 (1971).[6]

In *Mayfield* this Court did recognize that an inflexible approach to Rule 1100 is inappropriate. In that case, Superior Court had held that delays attributable to court administration could never justify an extension under Rule 1100(c). At that time, Rule 1100(c) did not, as it does today, provide expressly for the exclusion of judicial delays. This Court, nevertheless, reversed Superior Court, holding that we never intended such an inflexible result under Rule 1100. The *Mayfield* decision and the accompanying 1981 amendment, effective January 1, 1982, to Rule 1100 permit extensions provided the record shows:

"(1) the due diligence of the prosecution, and (2) certification that trial is scheduled for the earliest date consistent with the court's business; provided that if the delay is due to the court's inability to try the defendant within the prescribed period, the record must also show the causes of the court delay and the reasons why the delay cannot be avoided."

469 Pa. at 222, 364 A.2d at 1349–50. That requirement must be given a realistic construction. A rigid requirement that the Courts of Common Pleas, particularly in urban areas with severely crowded criminal and civil dockets, must continually arrange and rearrange their schedules to accommodate the 180 day rule, would be ill-advised.

6. Rule 1100(f) states that:

(f) At any time before trial, the defendant or his attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this rule had been violated. A copy of such motion shall be served upon the attorney for the Commonwealth, who shall also have the right to be heard thereon. Any order granting such motion shall dismiss the charges with prejudice and discharge the defendant.

It may be possible, in an abstract sense, to arrange a crowded court calendar to insure that every criminal defendant is tried within 180 days. However, such a rigid system requires eliminating a realistic mechanism for scheduling civil cases, or giving weight to those who await trial in prison for lack of bail. Finally, trial judges, prosecutors, and defense attorneys would have to be available at all times to try defendants whose 180 days are about to run.[7]

In *Commonwealth v. Coleman*, 477 Pa. 400, 383 A.2d 1268 (1978), this Court considered whether the Commonwealth had exercised due diligence in bringing the defendant to trial where that trial was ultimately held less than thirty days after the 180th day and that delay was attributable to court administration. In *Coleman* the original 180-day period expired on March 24, 1975 and defendant's trial was listed for April 22, 1975. On March 12 the Commonwealth petitioned for and received an extension of time until April 28, 1975.

The trial court explained why the defendant in *Coleman* was tried more than 180 days after the complaint was issued.

Since calendar control is under the direct supervision and control of the Board of Judges of this County, we may take judicial notice of the manner in which our Court Administrator, under our direction, schedules criminal matters. The next criminal session scheduled after the session during which the continuance was granted commenced February 24, 1975, and was a 3 week session. The next succeeding criminal session commenced April 14, 1975, also a 3 week session. Taking into consideration the availability of judicial personnel, the Court sets the number of cases to be listed for each three week segment of criminal court. The Court administrator then schedules specific cases at least 30 days prior to the first date of the criminal session, so that attorneys have ample notice, and

7. The continued efficient operation of our Common Pleas Courts depends on court calendars which allow at least a modicum of time for settlement conferences, work in chambers and argument court.

sufficient time is allowed for subpoenaing witnesses. As a practical matter, it is thus not possible to superimpose upon an already prepared list, those cases which are continued from a current list. Instead, as happened here, continued cases are scheduled for the second session thereafter. . . .

*Id.,* 477 Pa. at 404, 383 A.2d at 1270. Justice O'Brien, in a plurality opinion announcing the judgment of this court, concluded the trial court's explanation for the delay was "reasonable" and stated that the case was scheduled for the earliest date consistent with the business of the court.

A concurring opinion by Mr. Justice, now Chief Justice, Roberts in which Mr. Justice Manderino joined would have held that "[i]f the trial could not be scheduled within the period [prescribed by Rule 1100] because of the manner in which Montgomery County provides sessions for criminal trials, it was incumbent upon Montgomery County to change its procedure." *Id.,* 477 Pa. at 413, 383 A.2d at 1274 (quoting *Commonwealth v. Coleman,* 241 Pa.Superior Ct. 450, 454, 361 A.2d 870, 872 [1976] ). That view, which a majority of this Court declined to adopt in *Coleman,* is implicitly followed by the Superior Court here. It ignores the realities of crowded criminal and civil dockets which overburdened Common Pleas courts must deal with on a day-to-day basis. Rule 1100 was designed to promote the administration of criminal justice within the context of our entire judicial system, not to render that system hostage to its own closed logic. The goals of efficiency and ease of administration which Rule 1100 serves are worthy; they should not be exalted at the expense of justice. Thus, in interpreting our Rule 1100, we must throw away the stopwatch and pick up the scales of justice. *See, e.g., Commonwealth v. Blady,* 492 Pa. 285, 424 A.2d 864 (1980) (dissenting opinion, Larsen, J., in which Flaherty, J. joined).

Rule 1100 should not be construed to require Common Pleas Courts with backlogged criminal dockets to devote all their administrative and judicial resources to guarantee that every defendant is tried within the period pre-

scribed by the Rule.[8] It should be sufficient for the court to establish that it has devoted a reasonable amount of its resources to the criminal docket and that it scheduled the criminal trial at the earliest possible date consistent with the court's business. While the trial court may be required to rearrange its docket, if possible, when judicial delay has caused a lengthy postponement beyond the period prescribed by Rule 1100, or one that implicates the constitutional right to a speedy trial, it should not be required to do so to avoid a delay of under 30 days as here.[9]

We hold that the Superior Court erred in finding that these circumstances realistically allowed this case to go to trial within 180 days. Thus, we refuse to reverse the finding of the court forced to deal with the problem that a three week extension of the 180 day rule was appropriate.

## II.

Because of our holding that the Commonwealth met its burden of proving "judicial delay" we need not decide whether Rule 1100's prophylactic effect should inure to the benefit of a criminal defendant where trial counsel fails to oppose a Commonwealth petition for an extension of time. However, because of the alarming result of ineffective assistance of counsel in the context of Rule 1100's prophylactic application, i.e., discharging appellant, it merits our discussion here. Had defendant initially asserted his rights under Rule 1100 by opposing the extension petition, the trial court

**8.** The prophylactic application of Rule 1100 is believed to have contributed to a reduction of criminal backlogs by forcing Common Pleas to clear crowded court dockets at the risk of being compelled to discharge untried criminal defendants. M. Marshall and J. Reiter, *A Trial Court Working with Rule 1100,* 23 Vill.L.Rev. 284 (1977). It is ironic that in recent years the Rule has also caused both trial and appellate courts to devote a significant amount of scarce time considering petitions for extension of time and motions to dismiss based on Rule 1100.

**9.** There is a qualitative difference in permitting congestion to excuse short delays. Short delays do not seriously implicate a defendant's Sixth Amendment right to a speedy trial under *Barker v. Wingo* nor do they provide a disincentive for states to remedy congestion.

would have had the opportunity to try to adjust its schedule. By failing to object, defense counsel foreclosed any possibility of the trial court's expediting the trial date. Thus, if the Commonwealth could not subsequently establish unavoidable judicial delay discharge was inevitable on the certain collateral attack pursuant to our Post Conviction Hearing Act, Act of January 25, 1966, P.L. (1965) 1580, 19 P.S. § 1180–1, under the rubric of ineffective assistance of counsel.

Ironically, prophylactic application of Rule 1100 coupled with our standard for determining ineffective assistance render criminal counsels' ineffectiveness ultimately effective because failure to object to arguably improper extensions increases the likelihood of an erroneous grant of a continuance leading to the ultimate discharge for a Rule 1100 violation. Indeed, in this case, trial counsel's carelessness insured a favorable result. That insurance would have been cancelled had he properly objected to the Commonwealth's petition for an extension of time and given the trial court an opportunity to consider the question in an adversary posture.

Such a rule tempts the result-oriented practitioner to "deliberate" inadvertence or at least benign neglect. Trial and appellate court judges have long suspected the possibility of "built in" ineffective assistance by clever trial counsel. *See, e.g., Commonwealth v. Boykin,* 501 Pa. 250, 460 A.2d 1101 (1983) (Larsen, J. dissenting opinion). *See also Commonwealth v. Brown,* 497 Pa. 7, 438 A.2d 592 (1981). Our standard of ineffectiveness is ill-designed to recognize such perversions of an adversary system which was intended to vigorously safeguard the rights of criminal defendants.

Defense counsel's failure to object to an extension of time did not result in a denial of a fair trial nor is it fundamentally unfair to deny appellant the prophylactic effect of Rule 1100. When defense counsel fails to object to a Commonwealth petition for an extension of time, we will not discharge the defendant unless he has been deprived of his underlying right to a speedy trial under either the Sixth Amendment to the United States Constitution or Article 1, Section 9 of the Pennsylvania Constitution. *See Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

Such a failure to assert a basic constitutional right is likely to also involve an additional Sixth Amendment denial of the basic right to effective counsel. The present failure to assert a prophylactic rule when non-compliance with it could have arguably been remedied does not.

Reversed.

McDERMOTT, J., joins this opinion and files a concurring opinion.

ZAPPALA, J., files a dissenting opinion.

ROBERTS, C.J., did not participate in the consideration or decision of this case.

McDERMOTT, Justice, concurring.

I join in the Opinion of the Majority. However, I am compelled to comment further that cases like this one, and other of its ilk argue convincingly for altering the current Rule 1100. Thus, I would modify the Rule in the following manner.

Rather than the current 180 day period, I advocate the adoption of a 270 day period within which to permit prosecution. However, to insure that untried defendants are not unduly confined without an opportunity to have their day in court, I would maintain the 180 day period as the maximum that a defendant could be incarcerated for a given offense while awaiting the commencement of his trial.[1] In such an instance the defendant would be released upon petition of his attorney, but the Commonwealth would be permitted to bring the defendant to trial within the following 90 days. If at the end of 270 days, discounting excludable time under Pa.R.Crim.Pro. 1100(c); and 1100(d), the defendant was not brought to trial, then, and only then, would we impose the drastic sanction of dismissing charges altogether.

ZAPPALA, Justice, dissenting.

I dissent from the majority's holding that Rule 1100 was complied with. In order to properly deal with the Rule 1100

---

[1]. For purposes of calculating this 180 day period the provisions of Pa.R.Crim.Pro. 1100(c), would be inapplicable.

issue, it is necessary to detail the circumstances relevant thereto, which are as follows: Charges were filed on July 21, 1976. Trial was required to commence by January 17, 1977. The case was listed for trial on November 8, 1976, but not reached. On January 7, 1977, the Commonwealth, alleging that Appellee could not be brought to trial within the 180-day period, filed a Petition for Extension pursuant to Rule of Criminal Procedure 1100(c). Appellee's counsel did not file an Answer to the Petition or appear at the hearing. The Petition was summarily granted. Trial was held on February 8, 1977.

At the evidentiary hearing, Appellee's trial counsel could not offer any justification for failing to contest the Petition for Extension. He testified that at the time, a secretary had just left his employment, that his office "was really all loused up", that to the best of his knowledge, he was not aware of the Petition for Extension, although his file showed that he was properly notified of it, and that he would have appeared for a hearing on such a petition if he had been aware of it.

The Chief Clerk in the Montgomery County District Attorney's Office testified concerning the Commonwealth's actions prior to trial. He testified that the District Attorney's Office was responsible for listing cases for arraignment and then scheduling trial dates. Appellee was arraigned on October 12, 1976 and scheduled for trial on November 8, 1976. The witness testified that the District Attorney's Office had no control over the scheduling of the case after its initial listing for trial.

A Criminal Assignment Clerk employed by the Court Administrator's Office also testified. She said that cases are tried in the order they are listed and that the instant case was not tried because there were previously listed cases ahead of it. The witness testified as to the number of judges available for trial. The number varied from week to week. During the period from the listing of the case for trial to the actual trial, there were eight weeks during which four judges were available for criminal trials, one during

which three were available, three during which two were available and two during which none were available. The witness testified that the order in which cases were tried could be changed when there was a grant of a continuance or an attorney conflict. She said that the order was not changed on the basis of the age of the cases for Rule 1100 purposes. She said that she had no knowledge of any case being reassigned from one Assistant District Attorney to another during the relevant time period and that such reassignment would be under the control of the District Attorney's Office.

Rule of Criminal Procedure 1100(c)(3) provides that an extension of the deadline for commencement of trial on motion of the Commonwealth "shall be granted only upon findings based upon a record showing that trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth and, if the delay is due to the court's inability to try the defendant within the prescribed period, upon findings based upon a record showing the causes of the delay and the reasons why the delay cannot be avoided."

The Commonwealth has the burden to establish by a preponderance of evidence that the requirements of this provision have been met, *Commonwealth v. Ehredt,* 485 Pa. 191, 401 A.2d 358 (1979). A court may grant an extension on a showing of due diligence and a certification that trial is scheduled for the earliest date consistent with the court's business, but if a delay is due to the court's inability to try the defendant within the prescribed period, the record must show the causes of the delay and the reasons why it cannot be avoided, *Commonwealth v. Mayfield,* 469 Pa. 214, 364 A.2d 1345 (1976). A bare assertion that a case was ready for trial but not reached is insufficient to justify an extension for judicial delay, *Commonwealth v. Hill,* 290 Pa.Super. 399, 434 A.2d 813 (1981). Judicial delay that prevents a case from being tried within the prescribed period does not justify an extension if the situation is brought about by a lack of due diligence on the part of the Commonwealth. In *Commonwealth v. Martin,* 246 Pa.Super. 407, 371 A.2d 903

(1977), the Commonwealth did nothing to bring defendant to trial for four months after the Complaint was filed and waited five and one-half months to obtain an indictment. Such delay on the part of the Commonwealth was held to manifest a lack of due diligence and to preclude an extension on the basis of judicial delay.

Under the facts of the instant case, I would find that there was not a proper basis for extension. The Commonwealth should be held to the requirement that it exercise due diligence at all times during the pendency of a case. The Commonwealth's unexplained delay in arraigning Appellee manifested a lack of due diligence similar to that shown in *Martin, supra.* Furthermore, the Superior Court decided that an extension on the basis of judicial delay could not be granted in the absence of a showing that the case could not be moved ahead of other cases that did not have Rule 1100 problems. The testimony indicated that it was not the court's practice to change the order in which cases were tried for that reason, and thus no effort was made to determine whether Rule 1100 problems could be avoided by moving the case ahead of others.

The majority holds today that strict adherence to the 180-day rule is ill-advised because of the rigidity it demands and the hardships it causes in urban areas with crowded dockets. I must respectfully disagree. Applying the majority's view of Rule 1100 totally emasculates the purpose for which the Rule was adopted. The Rule was promulgated to ensure a defendant's constitutional right to a speedy trial and to avoid a case by case review to determine whether that right has been violated. It is totally illogical to have a rule designed to protect both an individual defendant and society at large and now to apply that rule in such an elastic fashion so as to accommodate the practices of various judicial districts. If the majority is of the belief that the Rule should be abandoned, then it should do so without the charade of judicial gymnastics.

Counsel's failure to contest the Petition for Extension constituted ineffectiveness such as to entitle Appellee to relief. As noted *supra,* counsel offered no justification for

failing to contest the Petition for Extension. In *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967), we held that in a case involving a claim of ineffective assistance of counsel, a reviewing court must conduct an independent review of the record and examine counsel's stewardship in light of available alternatives. Counsel is deemed effective once it is determined that the course of action had a reasonable basis designed to effectuate the client's interests. The failure of counsel to take a particular action on behalf of a client does not constitute ineffectiveness if it is based on a reasonable assessment of its value, but the failure does constitute ineffectiveness if it is the result of sloth or lack of awareness of available alternatives, *Commonwealth v. Twiggs,* 460 Pa. 105, 331 A.2d 440 (1975). Counsel is not ineffective in failing to assert a baseless claim, but an inquiry into the basis for counsel's decision must be made if the claim has arguable merit, *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977). In the instant case, the record shows that the failure of counsel to oppose the Petition for Extension was due to neglect and not a reasonable assessment of the merits. Counsel should be deemed ineffective, as opposition to the Petition for Extension would have had merit.

I would affirm the Order of the Superior Court and discharge Appellee.