494 A.2d 367

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Salvador MORALES, a.k.a. Simon Pirela, Appellant.**

Supreme Court of Pennsylvania.

Argued April 17, 1985.

Decided June 18, 1985.

Alexander Hemphill, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Leslie Sudock, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

On May 18, 1983, a jury in the Court of Common Pleas of Philadelphia County found both appellant, Salvador Morales, and his co-defendant, Carlos E. Tirado, guilty of murder of the first degree, criminal conspiracy and possession of an instrument of crime. The following day, the same jury sentenced appellant to death for the murder of Jorge ("Georgie") Figueroa in a separate penalty proceeding as required by the Sentencing Code, 42 Pa.C.S.A. § 9711.[1] Appellant's co-defendant received a sentence of life imprisonment. Post-verdict motions were filed and denied by the Court of Common Pleas, and this automatic appeal followed. 42 Pa.C.S.A. §§ 9711(h)(1) and 722(4) and Pa.R.A.P. Rule 702(b).

The record discloses, largely through the testimony of Elizabeth ("Lisa") Colon and her brother, Heriberto ("Eddie") Colon, the following facts. Appellant and his brother, co-defendant Carlos Tirado (known as "Cobo"), sold heroin in North Philadelphia. Georgie Figueroa, the victim, owed them some money for drug purchases. Although the victim's mother had already given appellant some $600 on behalf of her son, appellant was unsatisfied. Accordingly, he summoned the victim, through a fourteen year old drug dealer in appellant's employ, to a house on North Orianna Street where Cobo lived with Lisa and Eddie Colon. The victim was led to the house at approximately 11:45 p.m. on August 29, 1982, entered, and went into the basement with

---

1. The Honorable Albert F. Sabo formally sentenced appellant to death on November 3, 1983 and sentenced him to consecutive terms of imprisonment of twelve and one-half to twenty-five years on the remaining convictions.

appellant, followed a few minutes later by Eddie. Also in the basement was appellant's other brother "Dency" and a young man called "Dice". Lisa Colon was upstairs.

In about five minutes, appellant came upstairs to the kitchen and took a large kitchen knife back down to the basement. After Cobo and Dice beat the victim, accusing him of "snitching" and of owing them money, appellant told Dency to kill the victim. When Dency refused, appellant slapped Dency in the face, and stabbed the victim numerous times with the kitchen knife until appellant announced he was dead. The group then returned upstairs. A short while later, the victim emerged from the basement, covered with blood. When he tried to escape by jumping out the window in the living room, Cobo grabbed him by his hair and stabbed him repeatedly with the same knife, killing him.

Elaborate efforts were made to clean up all of the blood in the basement and living room, including dismantling the living room couch and removing panelling in the basement. The victim's body was tied up, covered with plastic bags, put in a shopping cart and taken to the basement of an abandoned house only five doors away.

Acting on a tip from an anonymous caller, police discovered the victim's body, badly decomposed, in the abandoned house on North Orianna Street on September 9, 1982. An autopsy revealed that the victim had been stabbed at least twenty times and that the weapon had been wielded by two different persons. Investigation of the Colon home discovered a small human blood stain on a bureau in the basement that had apparently been overlooked.

Neither defendant testified at trial. Counsel for both men cross-examined the eyewitnesses at length in an attempt to impeach their credibility. Appellant's counsel elicited Lisa's admission that she and Cobo had been lovers and suggested that she had implicated appellant because she was protecting Cobo and her brother Eddie. Co-defendant's counsel attempted to show, through cross-examination, that Lisa was out to "get" Cobo because Cobo had jilted her for

another woman, and also because she wanted to protect Eddie. Both counsel attacked Eddie Colon's testimony on the grounds that he had cut a deal with the prosecutor to get favorable treatment in another prosecution for a conspiracy/homicide in which he had participated in exchange for his testifying against appellant and co-defendant in the instant case.

■ The jury believed the testimony of the eyewitnesses, however, and found both defendants guilty of murder of the first degree, conspiracy and possession of an instrument of a crime. Based upon the foregoing record evidence, we have no hesitation in finding that evidence sufficient beyond a reasonable doubt to sustain appellant's conviction for murder of the first degree, as well as the other convictions.[2]

The following day, the penalty phase of the proceedings were conducted. The Commonwealth did not offer any further evidence against co-defendant Tirado in support of the death penalty. Against appellant, however, the Commonwealth introduced as aggravating circumstances evidence that he had been convicted by a jury in the Court of Common Pleas of Philadelphia County on April 7, 1983 of murder of the first degree for the unrelated killing of Julio Cruz, and had been sentenced to life imprisonment for that murder. Appellant did not testify at the penalty proceeding, nor did he permit his attorney to offer any evidence in his behalf.

Closing arguments were made by counsel for the defendants and for the Commonwealth, and the jury received instructions from the court. In less than three hours, the jury returned with a sentence of life imprisonment for co-defendant Tirado and a sentence of death for appellant. The jury found that the Commonwealth had met its burden of establishing two aggravating circumstances beyond a

2. Although appellant does not challenge the sufficiency of the evidence in this appeal, this Court will always review the sufficiency of the evidence to sustain a conviction of murder of the first degree in capital cases. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 26 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983).

reasonable doubt [3] and that there were no mitigating circumstances.

Our standard of review in cases of murder of the first degree in which a verdict of death has been rendered is established by the Sentencing Code, 42 Pa.C.S.A. § 9711(h), which provides:

(2) In addition to its authority to correct errors at trial, the Supreme Court shall either affirm the sentence of death or vacate the sentence of death and remand for the imposition of a life imprisonment sentence.

(3) The Supreme Court shall affirm the sentence of death unless it determines that:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) the evidence fails to support the finding of an aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

Applying that standard, we now affirm appellant's convictions, his sentence of death and his sentences on the non-homicide convictions.

■ Appellant first asserts several instances of pretrial error. Initially, appellant alleges a speedy trial violation and claims that the court erred in granting the Commonwealth's petition for extension of time filed pursuant to Pa.R.Crim.Pro. Rule 1100(c). The original 180 day "run date" under Rule 1100 was March 28, 1983. The Commonwealth's petition for extension was filed on March 24th and argued on March 28th. The Commonwealth averred that it was prepared to go to trial but that appellant was una-

---

**3.** The aggravating circumstances found by the jury were that appellant had "a significant history of felony convictions involving the use or threat of violence to the person" and that he had "been convicted of another ... offense ... for which a sentence of life imprisonment or death was imposable...." 42 Pa.C.S.A. § 9711(d)(9) and (10), respectively.

vailable as he was then standing trial for the murder of Julio Cruz. That trial had begun on March 24, 1983 and ended April 7th. The Commonwealth further averred that there were approximately fifty homicide cases with run dates expiring in April, 1983 and approximately sixty-five homicide cases with run dates expiring in May, 1983, and accordingly requested a 45 day extension of time. After hearing testimony from calendar control personnel regarding pending homicide cases and availability of court rooms and judges, and after oral argument, the court granted an extension of time to no later than May 12, 1983. Voir dire actually commenced on May 3, 1983. Under these circumstances, it is clear that the court did not err in granting the Commonwealth's petition for extension of time. Pa.R. Crim.P. Rule 1100(c)(3) and (4);[4] *Commonwealth v. Crowley*, 502 Pa. 393, 466 A.2d 1009 (1983); *Commonwealth v. Mayfield*, 469 Pa. 214, 364 A.2d 1345 (1976).

■ Appellant next argues that the court erred in denying his motion to sever the consolidated trial. This argument has no merit. Pa.R.Crim.Pro. Rule 1127 provides, in relevant portion:

### A. Standards

\* \* \* \* \* \*

(2) Defendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act or transaction ... constituting an offense or offenses.

**4.** The court's granting of the petition for extension fully complied with Rule 1100(c) which provides, in relevant portion:

(3) Such motion shall set forth facts in support thereof, and shall be granted only upon findings based upon a record showing that trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth and, if the delay is due to the court's inability to try the defendant within the prescribed period, upon findings based upon a record showing the causes of the delay and the reasons why the delay cannot be avoided.

(4) Any order granting a motion for extension shall specify the date or period within which trial shall be commenced. Trial shall be scheduled for the earliest date or period consistent with the extension request and the court's business, and the record shall so indicate.

This rule of joinder parallels the case law which recognizes that joint trials of co-defendants is advisable when the crimes charged grew out of the same acts and much of the same evidence is necessary or applicable to both defendants. *Commonwealth v. Jackson,* 451 Pa. 462, 303 A.2d 924 (1973); *Commonwealth v. Kloiber,* 378 Pa. 412, 106 A.2d 820 (1954), *cert. denied* 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed. 688 (1954).

Of course, Pa.R.Crim.Pro. Rule 1127 should be read in conjunction with Pa.R.Crim.Pro. Rule 1128 in appropriate circumstances. Rule 1128 provides:

### Severance of Offenses or Defendants

The court *may* order separate trials of offenses or defendants or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together.

Comment: This rule provides the procedure whereby the court may, because of prejudice to a party, order separate trials of offenses or defendants that otherwise would be properly tried together under Rule 1127. A defendant may also request severance of offenses or defendants on the ground that trying them together would be improper under Rule 1127. (emphasis added)

This Court has consistently held that the decision whether to sever trials of co-defendants is one within the sound discretion of the trial judge and will not be disturbed on appeal absent a manifest abuse of that discretion. *Commonwealth v. Tolassi,* 489 Pa. 41, 49–50, 413 A.2d 1003 (1980) (*see* cases cited therein); *Commonwealth v. Iacino,* 490 Pa. 119, 415 A.2d 61 (1980); *see also Commonwealth v. Katsafanas,* 318 Pa.Super. 143, 464 A.2d 1270 (1983) *and Commonwealth v. Hamm,* 325 Pa.Super. 401, 473 A.2d 128 (1984).

With the foregoing in mind, it is clear that the court did not abuse its discretion in denying appellant's motion to sever his trial from co-defendant's. The evidence against appellant was virtually identical to the evidence against co-defendant, and the Commonwealth's case against one

defendant exactly the same as against the other. And, while appellant alleged that consolidation of trials against both defendants would unfairly prejudice him, appellant failed to inform the court as to the nature of that prejudice. Similarly, appellant does not now state with particularity the manner in which he may have been prejudiced by consolidation of trials, but instead argues abstractly that his defense was "inconsistent" and in "conflict" with co-defendants'.

The probability of antagonistic defenses is *one* of the factors that a court should *consider* in deciding whether to grant severance. *See, e.g., Commonwealth v. Hamm, supra,* 325 Pa.Superior Ct. at 411, 473 A.2d at 133; ABA Standards for Criminal Justice Relating to Joinder and Discovery § 13–3.2(c) and Commentary. However, more than a bare assertion of antagonism is required. In the instant case, not only does appellant fail to indicate the manner in which his defense "conflicted" with co-defendants', the record does not support an inference that he was hindered in any way from presenting whatever defense he wished to present. Neither defendant took the stand to testify. Both defense attorneys vigorously attacked the credibility of the Commonwealth witnesses. Co-defendant Cobo's defense was that Lisa Colon named Cobo as the murderer because he had jilted her and in order to protect her brother. Appellant's defense was that Lisa named him because she was protecting her former lover Cobo as well as her brother. While these defenses might be seen as mildly antagonistic, in important respects they complement each other. That their defenses may have been mildly antagonistic did not, in and of itself, pose such a significant possibility of prejudice to appellant in this case so as to require the court to grant the motion to sever. Joinder was most appropriate, therefore, and the court did not abuse its discretion in denying the motion to sever.

On May 2–3, 1983, a suppression hearing was held, following which the court denied appellant's motion to suppress. Before voir dire commenced, appellant objected to

being given only ten peremptory challenges, as provided in Pa.R.Crim.Pro. Rule 1126(b)(1), and insisted that he be given the twenty peremptory challenges that he would be entitled to had he been tried alone. Pa.R.Crim.Pro. Rule 1126(a)(3). The court rejected this request, at which point appellant informed the court, for the first time, that he wished to waive a jury trial. Co-defendant did not similarly waive his right to a jury trial, and the court therefore denied appellant's request for a non-jury trial. Appellant now contends that these pretrial rulings were erroneous and deprived him of a fair trial. We disagree—both rulings were well within the court's sound discretion.

Rule 1126 prescribes the number of peremptory challenges (twenty) available in a trial involving a capital felony where there is only one defendant. Pa.R.Crim.Pro. Rule 1126(a)(3). However, subsection (b) explicitly provides:

(1) In trials involving joint defendants, the defendants shall divide equally among them that number of peremptory challenges that the defendant charged with the highest grade of offense would have received if tried separately....

(2) In trials involving joint defendants, *it shall be within the discretion of the trial judge to increase the number of peremptory challenges* to which each defendant is entitled up to the number of peremptory challenges that each defendant would have received if tried alone. (emphasis added)

 The court acted within the discretion expressly granted it by Rule 1126(b), especially where appellant failed to allege, much less demonstrate, how he would be prejudiced by the limitation of peremptory challenges.[5] Moreover, the limitation of peremptories did *not* prejudice appellant, because he failed to exhaust the ten challenges allotted to him. *See Commonwealth v. Romeri,* 504 Pa. 124,

---

5. There is no constitutional right to any peremptory challenges, let alone any particular number of challenges. *Commonwealth v. Henderson,* 497 Pa. 23, 438 A.2d 951 (1981); *Commonwealth v. Hamm,* 325 Pa.Super. 401, 473 A.2d 128 (1984).

470 A.2d 498 (1983) *cert. denied,* 466 U.S. 942, 104 S.Ct. 1922, 80 L.Ed.2d 469 (1984) (party who fails to exhaust peremptory challenges cannot complain of the trial judge's action in overruling a challenge for cause).

■ The court also acted within its discretion in refusing to allow appellant to waive a jury trial. Pa.R.Crim.Pro. Rule 1101 provides:

**Waiver of Jury Trial**

*In all cases the defendant may waive a jury trial with the* consent of his attorney, if any, and *approval by a judge of the court in which the case is pending,* and elect to be tried by a judge without a jury. The judge shall ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record. (emphasis added)

This Court has recently set forth the parameters of a trial court's discretion under Rule 1101.

[T]he decision whether to grant a defense request for a non-jury trial must be made solely by the trial court, which is charged with the constitutional responsibility of assuring the fair and orderly administration of justice.

\* \* \* \* \* \*

While the prosecutor's concurrence in or opposition to a defense request for a non-jury trial is a relevant consideration in determining the mode of trial, amended Rule 1101 does not deem any one fact or circumstance controlling. Rather, the decision whether to permit a non-jury trial is to be made by the court, taking into account all relevant considerations. *See, e.g., Commonwealth v. Pettiford,* 265 Pa.Super. 466, 402 A.2d 532 (1979), *Commonwealth v. Lee,* 262 Pa.Super. 280, 396 A.2d 755 (1978), and *Commonwealth v. Garrison,* 242 Pa.Super. 509, 364 A.2d 388 (1976) (jury trial waivers properly denied where records indicated "judge shopping").

*Commonwealth v. Sorrell,* 500 Pa. 355, 358–59, 456 A.2d 1326 (1982); *see also Commonwealth v. Bell,* 328 Pa.Super.

35, 476 A.2d 439 (1984), petition for allowance of appeal denied (1984).

■ As we have held, the joint trial of appellant and co-defendant was proper, as was the court's refusal, on March 28, 1983, to sever defendants' trials. The request to waive a jury trial was not made by appellant until May 3, 1983, after the court had denied his suppression motion and his request for additional peremptory challenges. The court viewed appellant's belated request as "a shallow attempt to circumvent the denial of a severance", Opinion of the court denying post-verdict motions at 13, and the record supports that view. Appellant's co-defendant refused to waive his right to a jury trial. Finally, it is obvious there is no inherent prejudice in proceeding to trial by jury as opposed to trial before a judge. *Commonwealth v. Bonacurso*, 500 Pa. 247, 255, 455 A.2d 1175 (1983). Under all of these circumstances, the court properly withheld its approval of appellant's purported waiver of jury trial.[6]

■ Appellant also argues that the process of "death-qualifying" the jury under *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) (that is, the process of excluding for cause veniremen who could not impose the death penalty under any circumstances or whose attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's guilt) resulted in a "prosecution-prone" jury which did not represent a fair cross-section of the community.[7] Appellant offered no evidence below to support this contention, and relies solely on the decision of the federal district court for the eastern district of Arkansas in *Grigsby v. Mabry*, 569 F.Supp. 1273 (E.D.Ark.1983). This Court has consistently

6. Prior to the 1973 amendment, Rule 1101 precluded a defendant in a capital case from waiving a jury trial. Pa.R.Crim.Pro. Rule 1101, Comment.

7. Appellant does not allege that prospective jurors were excluded for cause on a basis broader than that permitted by *Witherspoon*. Had appellant made such an argument, our analysis would have taken into account the significant modification of the scope of *Witherspoon* as recently set forth by the United States Supreme Court in *Wainwright v. Witt*, —— U.S. ——, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

rejected this argument. As we stated in *Commonwealth v. Szuchon*, 506 Pa. 228, 484 A.2d 1365, 1380–81 (1984):

Appellant claims that the scientific and sociological surveys and data currently available have now conclusively established the "prosecution-proneness" of "death-qualified" juries and asks this Court to take judicial notice of this data to find his conviction impermissibly tainted. This we decline to do, as we have consistently done in the past. (citations omitted) Appellant has made no showing on the record that the process of "death-qualifying" a jury tainted his conviction in any way, and his "judicial notice" concept must be rejected—such "a loose concept of 'judicial notice' would make a mockery of the adversary system...." *Commonwealth v. Story, supra* at 497 Pa. [273] 289, 440 A.2d 488[ (1981) ] (Larsen, J., dissenting).[13]

---

[13] That the data remains too tentative and fragmentary to permit an appellate court to judicially notice that "death-qualified" juries are impermissibly prosecution-prone is demonstrated by the fact that, of the reported cases that have exhaustively analyzed the data following full evidentiary hearings, our research has discovered only one case in which a conviction has been overturned on the basis of that data. *Grigsby v. Mabry*, 569 F.Supp. 1273 (E.D.Ark.1983), on remand from Eight Circuit, 637 F.2d 525 (8th Cir.1980). *But cf. Keeten v. Garrison*, 742 F.2d 129 (4th Cir.1984) reversing the decision of federal district court; *Spinkellink v. Wainwright*, 578 F.2d 582 (5th Cir.1978); *Hovey v. Superior Court of Alameda Co.*, 28 Cal.3d 1, 168 Cal.Rptr. 128, 616 P.2d 1301 (1980).

■ Appellant's remaining allegations of error concern the penalty phase of his proceedings. Initially, he challenges the constitutionality of the bifurcated death penalty proceeding, alleging it violates due process because it is conducted immediately after trial with little or no time to prepare. This argument is without merit. The bifurcated sentencing procedures have been thoroughly dissected and their validity upheld by this Court. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 39–43 and 57–60, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). We see no reason to disturb that decision.

■ Appellant next argues that the court erred in refusing his request to instruct the jury that his conviction of murder of the first degree for the killing of Julio Cruz was

at the post-verdict motion stage and could be overturned at that stage or on appeal. This conviction was the underlying basis for the jury's finding of both aggravating circumstances, namely, that appellant had "a significant history of felony convictions involving the use or threat of violence to the person" and that appellant "has been convicted of another Federal or State offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable...." 42 Pa.C. S.A. § 9711(d)(9) and (10). We do not agree that the court's refusal to give the requested instruction was erroneous.

In *Commonwealth v. Travaglia,* 502 Pa. 474, 467 A.2d 288 (1983), this Court rejected Travaglia's argument that, because sentence had not yet been imposed on his plea of guilty to homicide charges in another county, the Commonwealth could not proffer that plea as a "conviction" under 42 Pa.C.S.A. § 9711(d)(10). In rejecting that argument, we stated:

> While this argument has superficial appeal, it must fail upon closer inspection. The clear import of the first part of subsection (d)(10) is to classify the commission of multiple serious crimes as one of the bases upon which a jury might rest a decision that the crime of which the defendant stands convicted, and for which they are imposing sentence, merits the extreme penalty of death. ... By including offenses committed contemporaneously with the offense in issue, the legislature clearly indicated its intention that the term "convicted" not require final imposition of sentence, but cover determinations of guilt as well....
>
> \* \* \* \* \* \*
>
> For these reasons, we find that, as used in 42 Pa.C.S. § 9711(d)(10), the legislature evidenced a clear intent that "convicted" mean "found guilty of" and not "found guilty and sentenced."

502 Pa. at 496–98, 467 A.2d 288 (footnote omitted).

Subsequently, we applied the same reasoning in the context of subsection (d)(9). In *Commonwealth v. Beasley,* 505 Pa. 279, 479 A.2d 460 (1984), we stated:

68

There is no reason to believe that the meaning accorded by legislative references to convictions was not consistent in consecutively enumerated provisions listing aggravating circumstances within the same sub-section of the sentencing code. Thus within 42 Pa.C.S.A. § 9711(d), conviction for purposes of (d)(9) should be construed as having the same meaning as does conviction for purposes of (d)(10), thus allowing verdicts of guilt for which judgments of sentence have not yet been imposed to be considered by the jury as part of a defendant's history of felony convictions involving the use or threat of violence to the person. Under this approach, no error accrues unless the subsequently entered judgments of sentence are overturned on appeal. *This comports with the traditional function of the penalty stage to focus upon aspects of a defendant's character. See Commonwealth v. Bell, 417 Pa. 291, 296, 208 A.2d 465, 468 (1965). Character is reflected in verdicts of guilt, regardless of whether judgments of sentence have yet been entered.*

*Id.* at 505 Pa. 287–288, 479 A.2d 464 (emphasis added).

▮ As *Travaglia* and *Beasley* make clear, the character of the defendant is established by the determination of guilt, *not* by subsequent proceedings. Thus, the fact that a conviction for murder of the first degree is not final because it is at the post-verdict motion or appellate stage does not divest said conviction of its character as an aggravating circumstance.[8]

---

**8.** As review of a convicted murderer's sentence of death is one of the most, if not the most, weighty and important appellate tasks this Court is called upon to perform, it would not serve the interests of justice to withhold swift resolution of our review of a sentence of death pending appellate resolution of a collateral conviction. To do so would subject that resolution to the unavoidable delays possible in the appellate process, which delays are frequently caused or exacerbated by tactics of appellate counsel. For example, oral argument of appellant's collateral appeal of his conviction and life sentence for the murder of Julio Cruz has been delayed by defense counsel's two requests for extensions of time to file briefs, as well as by a remand for the appointment of new counsel. *Commonwealth v. Morales,* Superior Court Docket No. 452 Philadelphia, 1984. *See also Commonwealth v. Lesko,* 502 Pa. 511, 467 A.2d 307 (1983).

■■ Of course, if the underlying collateral conviction which forms the basis of an aggravating circumstance found by the jury is ultimately overturned, this Court is not without power to vacate the sentence of death in appropriate circumstances. Nor would we hesitate to stay an execution of sentence pending appellate disposition of the collateral conviction in appropriate circumstances. We need not decide, at this time, the circumstances that would compel this Court to vacate a sentence of death or stay its execution where the collateral conviction is overturned or appealed. We note, however, that such remedy might not be required, for instance, where the jury has found (and the record supports) the existence of several aggravating circumstances and no mitigating circumstances. Since the jury is required to return a sentence of death where it finds "at least one aggravating circumstance ... and no mitigating circumstance", 42 Pa.C.S.A. § 9711(c)(iv), the sentence of death would, it seems, retain its integrity even though one of the several aggravating circumstances is later declared to be invalid for some reason. *See, e.g., Commonwealth v. Beasley*, 504 Pa. 485, 500 n. 3, 475 A.2d 730, 738 n. 3 (1984) ("The presence of, and correctness of, a jury's finding of a second aggravating circumstance is not relevant in a case such as this where there have been found no mitigating circumstances, since one aggravating circumstance alone requires a verdict of death."); *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) (death sentence imposed by jury supported by at least one valid aggravating circumstance need not be set aside merely because another aggravating circumstance found by jury was ultimately declared unconstitutional by state supreme court; circumstances discussed where death penalty would be vacated); *Barclay v. Florida*, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983) (consideration by sentencing trial judge of an aggravating circumstance declared invalid under state law did not so infect process of weighing aggravating circumstances against mitigating as to require death penalty be vacated).

We hold, therefore, that the court did not err in refusing to instruct the jury that appellant's collateral conviction for the murder of Julio Cruz was on appeal and could possibly be overturned.

Appellant raises several other arguments concerning the court's instructions to the jury at the sentencing phase, which consisted of the following. As required by the Sentencing Code, the court instructed the jury, correctly, as to the respective burdens of proving aggravating and mitigating circumstances. 42 Pa.C.S.A. § 9711(c)(iii). The jury was next instructed that the verdict must be a sentence of death if it unanimously found at least one aggravating and no mitigating circumstance, or one or more aggravating circumstances which outweigh any mitigating circumstances, and that the verdict must be a sentence of life imprisonment in all other cases. 42 Pa.C.S.A. § 9711(c)(iv). Rather than orally instruct the jury as to the statutory aggravating and mitigating circumstances, or delineate specific circumstances that the court found to have been presented by the circumstances, the court instead provided the jurors with a written verdict form setting forth, verbatim, all of the statutory aggravating and mitigating circumstances.[9] The jury was then instructed to indicate on the written verdict form the circumstances it found to have been proven by the Commonwealth beyond a reasonable doubt, and those it found to have been proven by the defendants by a preponderance of the evidence, which it did. Finally, although neither defendant had presented additional evidence at the sentencing proceeding, the jury was instructed that "All the evidence from both sides, including the evidence you heard earlier during the case in chief as to aggravating or mitigating circumstances is important and proper for you to consider." Notes of Testimony, Sentencing Hearing May 19, 1983 at 14.51.

9. 42 Pa.C.S.A. § 9711(f) requires that where the sentence be death, the jury is to be provided with "such form as designated by the court" on which to set forth "the findings upon which the sentence is based".

Looking at the court's entire charge to the jury as set forth above, we have carefully examined appellant's several arguments concerning these instructions, and find them to be without merit. We will address these arguments seriatim. (1) The court erred in failing to specify the circumstances it deemed presented by the evidence. We find no possibility of prejudice in the court's lack of specificity. *See Commonwealth v. Beasley, supra* at 504 Pa. 497, 475 A.2d 737 ("Although the court did not elaborate as to which of the ones listed might apply in this case, we do not believe the jury could have been confused by the mere fact that the listing of such circumstances was, therefore, more extensive than was necessary."). (2) The court erred in failing to orally instruct the jury as to aggravating and mitigating circumstances, rather than providing the jury with the written list. While we have expressed, and continue to express, a preferance for oral instructions to the jury, we find neither abuse of discretion nor possibility of prejudice to appellant from the court's use of the neutral, unambiguous and complete written list of aggravating and mitigating circumstances. *See Commonwealth v. Baker*, 466 Pa. 382, 353 A.2d 406 (1976) *and Commonwealth v. Kelly*, 484 Pa. 527, 399 A.2d 1061 (1979). (3) The court "erred in charging the jury that they must find for the death penalty if they find at least one aggravating circumstance and no mitigating circumstances without advising the jury what could be considered mitigating". Contrary to appellant's assertion, the court did fully instruct the jury "what [circumstances] could be considered mitigating.". (4) The court erred "in holding that the jury could not find mitigating circumstances because the defendant did not present independent evidence at the trial or at the sentencing procedure." The record indicates that the court made no such instruction or "holding". The court's instructions to the jury were fair, adequate and substantially of the form and substance required by the Sentencing Code. 42 Pa.C.S.A. § 9711(c).

█ Appellant also contends that the court erred in denying his request for a continuance made immediately prior to commencement of the sentencing hearing in order to secure the appearance of a psychiatrist. On the record, it would appear that this belated request was properly denied, for appellant gave no indication to the court (nor to this Court) as to how the psychiatrist's testimony would have been beneficial.[10] More important, however, appellant made a knowing, intelligent and voluntary waiver, on the record, of his right to present any evidence at the sentencing hearing, generally, and of the psychiatrist's testimony/evidence, specifically. N.T. Sentencing Hearing May 19, 1983 at 14.12–.17. There was no error, under these circumstances, in denying counsel's request for a continuance.

█ Finally, we have examined the record of all proceedings below, and determine that appellant's sentence of death was not the "product of passion, prejudice or any other arbitrary factor" 42 Pa.C.S.A. § 9711(h)(3)(i), nor does the evidence fail "to support the finding of an aggravating circumstance specified in subsection (d)." 42 Pa.C.S.A. § 9711(h)(3)(ii).[11] We are also obliged to determine whether

10. The United States Supreme Court has recently held that where a defendant in a capital case makes a preliminary showing that his sanity is likely to be a significant factor at his sentencing, the state must provide the defendant with access to a psychiatrist whether or not he can afford to pay for the services. *Ake v. Oklahoma,* —— U.S. ——, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). A psychiatrist had been appointed and both appellant and his co-defendant were examined on May 16, 1983. Neither attorney attempted to secure the psychiatrist's attendance at the sentencing hearing by subpoena, nor did they obtain any reports or evaluations from him. Appellant's counsel specifically advised the court he "[sat] here without knowing ... whether the doctor has any testimony which would benefit the defendant in this matter...." N.T. May 19, 1983 at 14.3. Under these circumstances, it does not appear that the court abused its discretion in denying appellant's request for a continuance. *See Commonwealth v. Scott,* 469 Pa. 258, 365 A.2d 140 (1976).

11. Appellant does not challenge the sufficiency of the evidence to sustain the aggravating circumstance set forth in subsection (d)(9), namely that "defendant has a significant history of felony convictions involving ... violence ...", nor does he suggest that one prior homicide conviction is insufficient to constitute a "significant history" of violent felony convictions. In any event, the "presence of and correct-

the sentence of death imposed in the instant case is "excessive or disproportionate to the penalty imposed in similar cases...." 42 Pa.C.S.A. § 9711(h)(3)(iii). We have reviewed the data and information pertaining to similar cases that has been compiled by the Administrative Office of Pennsylvania Courts pursuant to this Court's directive in *Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700, 707–08 (1984), *cert. denied* — U.S. —, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984). Our review of cases wherein the aggravating circumstance set forth in subsection (d)(10) was presented discloses that the death penalty has been imposed in seven of seven cases. Accordingly, appellant's sentence of death is neither excessive nor disproportionate to that imposed in similar cases.

For the foregoing reasons, we sustain all of appellant's convictions and affirm the sentence of death for the conviction for murder of the first degree and the judgments of sentence of imprisonment for the remaining convictions.[12]

HUTCHINSON and ZAPPALA, JJ., concur in the result.

NIX, C.J., filed a dissenting opinion.

NIX, Chief Justice, dissenting.

I am compelled to dissent from the majority's affirmance of appellant's conviction. I must again stress my continued objection to the death qualification process, which produces juries which are both prosecution prone and unrepresentative of the community. *See Commonwealth v. Colson*, 507 Pa. 440, 470, 490 A.2d 811, 826 (1985) (Nix, C.J., dissenting); *Commonwealth v. Szuchon*, 506 Pa. 228, 260, 484 A.2d 1365, 1382 (1984) (Nix, C.J., dissenting); *Commonwealth v.*

ness of, a jury's finding of a second aggravating circumstance is not relevant in a case such as this where there has been found no mitigating circumstance, since one aggravating circumstance alone requires a verdict of death." *Commonwealth v. Beasley*, 504 Pa. 485, 500 n. 3, 475 A.2d 730, 738 n. 3 (1984).

12. The prothonotary of the eastern district is directed to transmit to the Governor, as soon as possible, the full and complete record of all proceedings below and of review by this Court. 42 Pa.C.S.A. § 9711(i).

*Maxwell,* 505 Pa. 152, 170, 477 A.2d 1309, 1319, *cert. denied,* ___ U.S. ___, 105 S.Ct. 370, 83 L.Ed.2d 306 (1984) (Nix, C.J., dissenting). While the United States Supreme Court, as I noted in my dissent in *Commonwealth v. Colson, supra,* is moving in the opposite direction, *see Witt v. Wainwright,* ___ U.S. ___, 105 S.Ct. 1415, 84 L.Ed.2d 801 (1985) (Marshall, J., dissenting from denial of stay of execution, joined by Brennan, J.); *Wainwright v. Witt,* ___ U.S. ___, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), fundamental fairness impels me to urge my colleagues to discard the death qualification process as a matter of state constitutional law.[1]

I must also dissent from the majority's affirmance of the jury's sentencing verdict. I cannot condone the trial court's failure to orally explain to the jury the statutory aggravating and mitigating circumstances they might find on the basis of the evidence received. Merely providing the language of the statute without the benefit of the trial court's explanation of the meaning of the language contained therein or its relationship to the evidence properly before the jury is totally inadequate. Just as it is essential at the guilt determining phase that the jury be fully instructed as to the elements of the crimes charged, it is crucial to a valid sentencing determination that there be no misconception on the part of the jurors in interpreting the statutory definitions or in determining what evidence may legitimately support the finding of an aggravating or mitigating circumstance.

Contrary to the majority's assertion that the statutory language furnished to the jury is "unambiguous," many of the statutory terms employed by the legislature are indeed open to more than one interpretation. This is borne out by the fact that it has been necessary for this Court to deter-

---

1. I would note also that the federal Court of Appeals Circuits are now split on this issue. *See Grigsby v. Mabry,* 758 F.2d 226 (8th Cir.1985). The United States Supreme Court has nevertheless declined to consider the question. *See Witt v. Wainwright,* ___ U.S. ___, 105 S.Ct. 1415, 84 L.Ed.2d 801 (1985) (Marshall, J., dissenting from denial of stay of execution, joined by Brennan, J.).

mine the meaning of several of these terms. *See Commonwealth v. Beasley,* 505 Pa. 279, 479 A.2d 460 (1984) ("convicted"; 42 Pa. C.S. § 9711(d)(10)); *Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700 (1984) ("age of the defendant at the time of the crime"; 42 Pa. C.S. § 9711(e)(4)); *Commonwealth v. Travaglia,* 502 Pa. 474, 467 A.2d 288 (1983) ("convicted"; 42 Pa.C.S. § 9711(d)(10)); *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982) ("witness to a murder or other felony" and "committed by the defendant"; 42 Pa.C.S. § 9711(d)(5)). Moreover, the proper interpretation of other statutory terms is an issue in a number of appeals presently pending before the Court. *See Commonwealth v. Dehart,* Nos. 77–78 M.D. Appeal Docket 1984 (J–103–1985; argued May 17, 1985) ("while in perpetration of a felony"; 42 Pa. C.S. § 9711(d)(6)); *Commonwealth v. Frederick,* No. 85 W.D. Appeal Docket 1983 (J–31–1985); argued March 4, 1985 ("significant history of felony convictions involving the use or threat of violence to the person"; 42 Pa.C.S. § 9711(d)(9)); *Commonwealth v. Goins,* No. 30 E.D. Appeal Docket 1984 (J–8–1985; argued January 22, 1985) (same); *Commonwealth v. Pursell,* No. 15 W.D. Appeal Docket 1984 (J–127–1984; argued September 11, 1984) ("torture"; 42 Pa.C.S. § 9711(d)(8)); *Commonwealth v. Cross,* No. 64 W.D. Appeal Docket 1982 (J–126–1984; argued September 11, 1984) ("significant history"; 42 Pa.C.S. § 9711(d)(9)); *Commonwealth v. Holcomb,* No. 41 W.D. Appeal Docket 1983 (J–122–1984; argued September 10, 1984) (same).

Given the ambiguities inherent in the statutory language, it is essential to meaningful appellate review that the record reflect the interpretation employed by the jury of relevant aggravating and mitigating circumstances. This is best achieved by a full and accurate charge to the jury. Without the guidance of the trial court, the jurors in the instant case were left to formulate their own interpretations of the statutory language. We have no way of determining how those terms were interpreted or even whether the jurors

agreed as to their meaning. Thus the appropriateness of the sentencing judgment must forever remain in question.