COMMONWEALTH OF
PENNSYLVANIA,
Appellee,

v.

**Terrell JOHNSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 26, 2004.
Filed May 6, 2004.
Reargument Denied July 19, 2004.

Raymond D. Roberts, Philadelphia, for appellant.

Hugh J. Burns, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before: KLEIN, KELLY and POPOVICH, JJ.

OPINION BY KLEIN, J.:

¶ 1 Terrell Johnson appeals from the judgment of sentence imposed after he was convicted of three counts each of robbery, theft by unlawful taking or disposition, receiving stolen property, simple assault, and recklessly endangering another person, as well as two counts of violation of the Uniform Firearms Act and one count each of possessing instruments of crime and criminal conspiracy. After he was convicted, the trial court sentenced him to a total of six to twelve years in jail. On appeal, Johnson asserts five issues, one of which is dispositive: he claims a violation of Pa.R.Crim.P. 600.

■ ¶ 2 On the basis of this record, the Commonwealth has not met its burden to show that the defendant could not

have been brought to trial within 365 days by the exercise of due diligence. The case was continued beyond the run date while the Commonwealth was present and defense counsel was not, there is no certification that this was the earliest date possible, and the judge who granted the continuance could not say that this was the earliest date possible. Therefore, we are constrained to vacate the judgment and discharge the defendant.

¶ 3 The charges against Johnson arose from an armed robbery in July 2001 in North Philadelphia. The complaining witness, Jose Cartagena, testified that while he and two friends were chatting in the area of 700 West Indiana Avenue, three men and two women arrived. Cartagena said that Johnson, accompanied by a woman named Polk, walked up to him. Johnson pointed a revolver into Cartagena's back and said, "This is a robbery. Give me everything." Johnson then pointed the gun behind Cartagena's left eye along the side of his face and took Cartagena's jewelry, wallet and cash. At Polk's instruction, Johnson then handed the loot to Polk. After the others with Johnson had robbed Cartagena's companions, Johnson and his cohorts ran toward a nearby silver car.

¶ 4 Meanwhile, two police officers, Officers Cleaver and McGuigan, were driving past the crime scene. As the officers passed Johnson and the others, the assailants began to run. By the time the officers got to the corner, the victims were shouting that they had been robbed. Officer Cleaver asked, "By who?" The victims pointed at Johnson and his codefendants. Johnson and the others were apprehended, and Johnson was convicted and sentenced as above.

¶ 5 Before trial, Johnson raised his Rule 600 claim. The parties agreed that, as applied to this case, Rule 600 essentially required the Commonwealth to exercise due diligence in bringing Johnson to trial by July 20, 2002.[1] Johnson claimed that he should be discharged because the case was not called for trial until July 29, 2002. The Commonwealth argued that during a May 1, 2002 hearing with another judge, without defense counsel present, the assistant district attorney informed the judge that assigned the July 29 date of the Rule 600 problem and the run-date. (N.T., 8/2/02, at 38.) The trial court denied the Rule 600 motion.

¶ 6 On appeal, the Commonwealth furthers an argument that the mechanical run-date had not yet passed. However, during the on-the-record discussion of the Rule 600 motion, the Commonwealth and the defense agreed that Johnson's "mechanical" run-date for Rule 600 was July 20, 2002:

THE COURT: I believe the complaints in this case were all filed, I think, on the same day. That was July 21, 2001—I will go through these. Ms. Polk is July 21st. *Mr. Johnson is July 20th*. Polk was the only one filed on the 21st of July. All others are filed on July 20th. The mechanical run date would be approximately July 20th of 21st of this year.

MS. KEISLING: I started at the 20th. It is the 20th, run date is the 20th.

THE COURT: For those filed on the 20th?

MS. KEISLING: Whatever it is, it's in my motion.

---

1. Rule 600 provides in relevant part:
   (3) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed.
   Pa.R.Crim.P. 600(A)(3).

THE COURT: Ms. Polk's may in fact run on the 21st. I believe we have agreed that for the sake of argument, we will look at July 21st. I don't think it makes—*July 20th is when this case was called for trial. I think it clear that there is no excluded time between July 20th, 2001 and July 29th 2002. Do we all agree on that?*

[ADA] *MR. DESIDERIO: Fine.*

(N.T., 8/2/02/ at 18–19 (emphasis added).)

¶ 7 As the trial court said, because everyone agreed that the mechanical run-date had already passed, the only remaining issue was whether the Commonwealth had demonstrated due diligence in bringing Johnson to trial. (*Id.*). Because the Commonwealth stipulated to the run-date and on that basis the trial court found no Rule 600 violation, we cannot consider the Commonwealth's argument on appeal that the Rule 600 deadline had not yet passed. (*See* Appellee's brief at 6–13.) *See In re Estate of Bullotta*, 575 Pa. 587, 838 A.2d 594, 596 (2003); *Reese v. Reese*, 351 Pa.Super. 521, 506 A.2d 471, 474 (1986) (Wieand, J.) ("[A litigant] will not be permitted to 'blow hot and cold' by now taking a position inconsistent with that by which he previously induced the trial court to act....").

¶ 8 Thus, the only issue before us is whether the trial court abused its discretion by finding that the Commonwealth exercised due diligence in bringing Johnson to trial. *See Commonwealth v. Bowes*, 839 A.2d 422, 424 (Pa.Super.2003). We conclude that it did.

■ ¶ 9 The trial court lacked competent evidence to conclude that the Commonwealth acted with due diligence. The burden is on the Commonwealth to show its due diligence. *Commonwealth v. McCutcheon*, 339 Pa.Super. 8, 488 A.2d 281, 284 (1985). " 'When a case has possible Rule 1100 problems, prosecutors must do everything reasonable within their power to see that the case is tried on time.' " *Com. v. Aaron*, 804 A.2d 39, 44 (Pa.Super.2002) (quoting *Commonwealth v. Browne*, 526 Pa. 83, 584 A.2d 902, 905 (1990)). In a very serious case like this, where it should foresee a Rule 600 problem, the Commonwealth needs to make certain a record is made to support its claim of due diligence. Here it did not.

¶ 10 Nothing in the Quarter Sessions file shows that the date given was the earliest possible date. We are not unaware of the difficulties in criminal cases caused by the Philadelphia County Clerk of Quarter Sessions' inability to keep accurate records. These kinds of problems would be greatly reduced by computerization and overall modernization. Nonetheless, as the party with the impending duty under Rule 600, the Commonwealth could have easily made sure the records were kept and kept accurately.

¶ 11 As things stand now, the Quarter Sessions file offers the Commonwealth no comfort. Frequently, when the earliest date is being given, the Quarter Sessions clerk puts on the record a notation, "EPD," i.e., "earliest possible date." Here the Quarter Sessions records from the May 1, 2002 listing do not have that notation or any other that tend to show whether this was the earliest date. It would have been easy for the Commonwealth to ensure that the clerk did so, but it did not. Nor are there any notes of testimony to show that this was done. It is possible that no notes were taken down, but again, it would not have been difficult for the Commonwealth to ensure that a transcript was created to substantiate its claim.

¶ 12 Beyond this gaping hole in the Quarter Sessions file, the Commonwealth otherwise suffered from a lack of evidence. In ruling on the Rule 600 issue, the trial

court relied on the representations of the assistant district attorney made during argument about what he told the scheduling judge and the scheduling judge's practices. However, unsworn representations of counsel are not evidence. Representations are not testimony—they are at most a part of argument. And this says nothing of the impropriety of the Commonwealth discussing even something as routine as scheduling with a judge without anything of record showing notice to, or without giving actual notice to, opposing counsel, especially in a case where timing of the trial is may be a dispositive issue. The Commonwealth simply did not provide any documents, such as an affidavit of the scheduling judge, to substantiate its claim that the case was given the earliest possible date.

¶ 13 To his credit, the trial judge did talk to the scheduling judge to determine if this was the earliest possible date. However, the scheduling judge could not recall whether or not this was the earliest possible date. The trial court simply assumed that it was. (Trial court opinion, 8/28/03, at 11.)

¶ 14 This assumption does not substitute for proof. There are a number of possibilities that this in fact was *not* the earliest possible date because the run date was not called to the scheduling judge's attention. It is common in setting up a trial list for a judge to leave dates open so a case that has a run-date problem can be put in. If the case does not have a run-date problem, the judge often would list it later to leave time for a case running up against a deadline. Thus, an equally or even more likely inference would be that the scheduling judge did not know about the Rule 600 run-date. There was no evidence on which the trial court could reach the opposite conclusion. In other words, the trial court did not know what happened at the May 1, 2002 hearing, and it was the Common-

wealth's duty to demonstrate its due diligence. The trial court operated on an assumption, which is not the equivalent of the Commonwealth carrying its burden.

¶ 15 In summary, there was a dearth of evidence to support the Commonwealth's arguments, and it therefore did not carry its burden to establish due diligence in bringing Johnson to trial within the required time. Despite this being a case in which very serious charges were brought, the law is clear that under these circumstances we must vacate the judgment of sentence and discharge the defendant. *Commonwealth v. Lynn*, 815 A.2d 1053, 1060 (Pa.Super.2003).

¶ 16 Judgment of sentence vacated. Defendant discharged.