J-S69006-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LARCELL WAGSTAFF | |
| Appellant | No. 2251 EDA 2013 |

Appeal from the Judgment of Sentence July 2, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013590-2009;
CP-51-CR-0013591-2009; CP-51-CR-0013595-2009

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., and STABILE, J.

MEMORANDUM BY GANTMAN, P.J.: **FILED DECEMBER 23, 2014**

Appellant, Larcell Wagstaff, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial conviction for unlawful contact with a minor, two counts of indecent assault, resisting arrest, and possessing a prohibitive offensive weapon.[1] We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case. Therefore, we see no reason to restatement them.

Appellant raises the following issues for our review:

---

[1] 18 Pa.C.S.A. §§ 6318; 3126; 5104; 908.1, respectively.

DID THE COURT ERR IN DENYING [APPELLANT'S] PA.R.CRIM.P 600(G) MOTION TO DISMISS?

DID THE COURT ERR BY ADMITTING TESTIMONY FROM POLICE OFFICER FULLER REGARDING STATEMENTS OF MEN OBSERVING A FIGHT DURING APPELLANT'S ARREST?

WAS THE EVIDENCE SUFFICIENT TO CONVICT APPELLANT OF RESISTING ARREST?

(Appellant's Brief at 3).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Genece E. Brinkley, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, filed March 12, 2014, at 10-21) (finding: **(1)** Appellant filed Rule 600(G) motion before adjusted run date; adjusted run date included delay attributable to Appellant **and** delay attributable to court's full trial docket; court properly concluded that Commonwealth exercised due diligence in bringing Appellant to trial, given court's congested trial docket; **(2)** prior to admission of hearsay statements, Officer Fuller testified that fight ensued between police officers and Appellant while police officers were trying to arrest Appellant; Officer Fuller testified that she and Officer Brosius were forced to use ASP sticks multiple times while attempting to arrest Appellant; fight, observed by declarants, between officers and Appellant was unexpected and shocking occurrence; declarants made statements immediately, with little to no time to confer; declarants

made statements in direct reaction to fight that declarants witnessed between Appellant and police officers; court properly allowed Officer Fuller to testify regarding declarants' statements under excited utterance exception; likewise, court properly found declarants' statements were made contemporaneous to fight and properly allowed Officer Fuller to testify regarding statements under present sense impression exception to hearsay rule; **(3)** Officer Fuller and Officer Brosius placed Appellant against brick wall to cuff Appellant; Appellant flexed his arms to make it difficult for officers to bring Appellant's arms behind his back; Officer Brosius repeatedly told Appellant to stop flexing arms and put his hands behind his back; Appellant refused repeated orders; both Officers used ASP sticks to subdue Appellant; Officers were further unable to cuff Appellant due to Appellant's effort not to be restrained; Appellant grabbed ASP stick from Officer Brosius and attempted to pull away ASP stick from Officer Brosius; Officer Brosius testified that while Appellant held Officer Brosius' ASP stick, Appellant reached into his own pocket in attempt to retrieve and use later-identified black taser; Officer Brosius heard clicking noise from Appellant's pocket as Appellant attempted to retrieve taser while Appellant's hand was in his own pocket; additional officers were required to be summoned to location before Appellant was finally subdued and cuffed; Appellant was arrested and searched; black taser was recovered from Appellant's pocket during search; court properly concluded Appellant resisted arrest by conduct which required

use of substantial force to overcome Appellant's resistance, and Appellant did so with intent to prevent police from discharging their duties; court properly found Appellant created substantial risk of physical injury to public servant).

We emphasize the Commonwealth filed its complaint against Appellant on October 17, 2009. So, the original trial run date was October 17, 2010. Appellant filed his Rule 600 motion to dismiss on March 1, 2012. The court held a Rule 600(G) hearing on June 7, 2012. During the hearing, the court established that 502 days of delay were attributable to Appellant. Thus, the court calculated an adjusted run date of March 2, 2012. The certified record reveals an additional 132 days of delay attributable to the court's congested trial docket. Therefore, the adjusted run date became July 12, 2012. Here, Appellant filed his Rule 600(G) motion on March 1, 2012, before the adjusted run date of either March 2, 2012, or July 12, 2012. Therefore, Appellant's Rule 600 motion was premature when filed. **See Commonwealth v. Hunt**, 858 A.2d 1234, 1243 (Pa.Super. 2004) (*en banc*), *appeal denied*, 583 Pa. 659, 875 A.2d 1073 (2005) (stating that to obtain relief, defendant must have viable Rule 600 claim when he files his motion for relief). The court subsequently scheduled trial at the earliest possible date. Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/23/2014</u>

# IN THE COURT OF COMMON PLEAS
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| **COMMONWEALTH** | : | **CP-51-CR-0013590-2009** |
| | | **CP-51-CR-0013591-2009** |
| | : | **CP-51-CR-0013595-2009** |
| **vs.** | CP-51-CR-0013595-2009 Comm. v. Wagstaff, Larcell Opinion | |
| **LARCELL WAGSTAFF** | | **SUPERIOR COURT** |
| | : | **2251 NO. EDA 2013** |

7126010911

**FILED**

MAR 1 2 2014

Criminal Appeals Unit
First Judicial District of PA

**OPINION**

**BRINKLEY, J.**                                                     **MARCH 12, 2014**

A jury found Defendant Larcell Wagstaff guilty of one count of unlawful contact with a minor, two counts of indecent assault, resisting arrest and possessing a prohibitive offensive weapon. Defendant was sentenced to 2 to 5 years state incarceration on the unlawful contact with a minor charge, 1 to 2 years state incarceration on the indecent assault charge with regard to one victim, 1 to 2 years state incarceration on the indecent assault charge with regard to another victim and 1 to 4 years state incarceration on the charge of prohibitive offensive weapon all to run consecutively to one another. Defendant was sentenced to no further penalty on the resisting arrest charge. This resulted in an aggregate sentence of 5 to 13 years state incarceration. Defendant appealed this judgment of sentence to the Superior Court and raised the following issues on appeal: (1) whether the Court erred in denying a rule 600(G) Motion to Dismiss; (2) whether the Court erred on hearsay grounds by admitting the testimony from Officer Fuller regarding statements of men observing the fight that ensued during Defendant's arrest; (3) whether the evidence was sufficient to convict Defendant of resisting arrest.

## PROCEDURAL HISTORY

On October 16, 2009, Defendant was arrested and charged with rape, unlawful contact with a minor, indecent assault, involuntary deviate sexual intercourse and indecent assault, aggravated assault, possessing an incapacitating device, offensive weapon, simple assault, and resisting arrest.

From October 31st to November 5th, 2012, this Court conducted a trial in the presence of a jury. On November 7, 2012, the jury found Defendant guilty of unlawful contact with a minor and indecent assault of G.G. (CP-51-CR- 0013590-2009), indecent assault of K.G. (CP-51-CR-0013591-2009) and resisting arrest and possessing a prohibited offensive weapon (CP-51-CR-0013595-2009). On July 2, 2013, this Court sentenced Defendant to 2 to 5 years state incarceration on the unlawful contact with a minor charge, 1 to 2 years state incarceration on the indecent assault charge with regard to G.G., 1 to 2 years state incarceration on the indecent assault charge with regard to K.G. and 1 to 4 years state incarceration on the charge of prohibitive offensive weapon all to run consecutively to one another. Defendant was sentenced to no further penalty on the resisting arrest charge. This resulted in an aggregate sentence of 5 to 13 years state incarceration. As a condition of this Court's sentence Defendant was ordered to get drug, mental health and sex offender treatment in jail, to obtain his GED and job training and to seek and maintain employment upon release. Defendant was also ordered by this Court to stay away from the two victims and pay mandatory court costs and supervision fees.

On July 29, 2013, defense counsel, C. Reginald Johnson, Esquire, filed a Notice of Appeal to the Superior Court. On September 7, 2013, defense counsel was permitted to withdraw. On September 18, 2013, Douglas P. Earl, Esquire was appointed by this Court. On November 25, 2013, upon receipt of all notes of testimony, this Court ordered that defense

2

counsel file a Concise Statement of Errors Complained of on Appeal Pursuant to Pa. R.A.P. 1925(b). On December 13, 2013, Defense counsel requested an extension of time, which was granted by this Court. On December 31, 2013, defense counsel filed a Concise Statement of Errors Complained of on Appeal.

## FACTS

The jury trial in this matter began on October 31, 2012. The Commonwealth called its first witness, G.G., to testify. G.G. testified that her date of birth was March 11, 1990 and that she moved to 2250 South 72nd Street in Philadelphia in 2004. She stated that at that time, she, her mother, her older sister, the Defendant and her three brothers lived there. She testified that after living in the house for some time, the Defendant would come into her room at night, touch her and penetrate her vagina with his penis. G.G. stated that this happened two or three times and that she did not tell anyone at the time what was happening. She testified that at the time of these events she shared a room with her brother Nathaniel Sullivan ("Sullivan") and that his bed was separated from her bed by a sheet used as a partition. She stated that after these incidents started, she started to put furniture in front of the door to prevent Defendant from entering. G.G. testified that these events happened approximately over the course a year. She left a year later. (N.T. 10/31/2012, p. 45-66).

G.G. testified that she did not tell her mother because she did not think her mother would believe her or do anything. She testified that she did not tell anyone else what was happening and would only write in a book about the assaults. She stated that her brother, Sullivan, found the book and that she did eventually tell him. G.G. testified that after her mother found out, a family meeting was called, during which Defendant accused G.G. of lying. After the meeting took place, G.G. testified that she did not continue to live at the house and instead lived at her

3

sister's house down the street. She testified that Defendant continued to live at the house. Id. at 66-78.

G.G. testified that on October 16, 2009 she received a text message from her sister K.G. wherein her sister stated that she wanted to leave their mother's house because the Defendant assaulted her. G.G. went to her mother's house where she saw K.G. upstairs and Defendant and one of her brothers. G.G. testified that her brother called the police. She testified that she was in the doorway when the police got to the house and that she directed the police to the Defendant, who was in the back of the house. Id. at 78-85.

On the second day of the jury trial, the Commonwealth called its next witness to testify, Sullivan. He testified that he had three sisters, two of whom are G.G. and K.G, who were both older than him. He testified that in 2005 he lived in Southwest Philadelphia on 72nd street with his sisters, two older brothers and the Defendant. He testified that while living in that house, he shared a room with G.G. and that his side of the room was separated by a sheet. He stated that he saw the Defendant in the room once at night standing over his sister's bed and that he remembered hearing his sister weeping in her sleep. He remembered waking up to the bedroom door closing. He testified that the next day G.G. told him that she was raped by the Defendant. He stated that eventually he and G.G. moved out of the house at different times. (N.T. 11/1/2012, p. 11-26).

Next, the Commonwealth called both victim's mother, Barbara Guess ("Guess"), to testify. She testified that she was in a relationship with the Defendant for about ten years. She stated that he lived with her on South 72nd Street and that they and her children moved into the house in 2005. She testified that G.G. lived in the house intermittently and that K.G. always lived in the house. She stated that when G.G. was living in the house there were a lot of

4

arguments between her, G.G. and the Defendant. She testified that one day while going shopping with G.G., G.G. told her that Defendant was touching her. She testified that she did not believe G.G. at the time nor after a family meeting that was held later. Guess testified that she noticed a change in Defendant's behavior after G.G. moved out of the house. She stated that Defendant was fighting more with her sons and that there were generally a lot of arguments in the house. She testified that during that time, she and Defendant used marijuana and that Defendant used angel dust as well. Id. at 44-78.

Guess testified that one night she observed her daughter K.G. sleeping in another room other than her bedroom and that when she asked K.G. why, KG. told her that Defendant had touched her on her backside. Guess testified that she observed Defendant closing the door to K.G.'s room one night, after which Guess changed the locks on the door to K.G.'s room. Guess testified that one day when she was at work she received a call from her son, after which she went home. Guess testified that she spoke with K.G. on the ride home and that K.G. told her that Defendant touched her while she was in her bed and she woke up with him in between her legs. Guess testified that she told K.G. to call the police. She stated that when she reached the house she saw a patrol car with K.G. inside and other police cars at her house. She testified that she then went to the Special Victim's Unit in the same car as K.G., spoke with a detective and gave a statement. Id. at 78-84.

The Commonwealth next called K.G. to testify. K.G. testified that she lived with Defendant on South 72nd Street from 2003 to 2009. She testified that she was close to the Defendant and considered him a father. She testified that sometime in 2009, she noticed that Defendant would look into her room at night when she was sleeping. K.G. testified that she once woke up to Defendant touching her backside and saw him leaving her room. K.G. stated that in

5

another incident he came into her room to talk to her and pinned her down and kissed her neck while she tried pushing him off of her. K.G. testified that on October 16, 2009, she was at home with her brother and her niece, but was alone in her room. She testified that Defendant came in her room while she was lying on the bed, took off her boxer shorts and started to perform oral sex on her. She stated that she froze at first, but then jumped up, ran upstairs, told her brother and texted her sister. She testified that her brother called Guess, who then told K.G. to call the police. K.G. testified that it took the police about five to ten minutes to arrive and once they arrived she stayed upstairs. She stated that later that day she went to the Special Victim's Unit and gave the detective a statement. Id. at 114-131.

On the third day of the jury trial, this Court heard testimony from the Commonwealth's next witness, Police Officer Naimbi Fuller ("Fuller"). Fuller testified that she was assigned to the 12th district and had been working there for four and a half years, including on October 16, 2009. She testified that she recognized the Defendant from October 16, 2009. Fuller stated that on October 16, 2009, her tour of duty took her to South 72nd street because of a radio call for a domestic disturbance. She testified that when she got to the location the first person she saw was the Defendant at the rear of the property. She said that she was met by K.G. who told her that the Defendant was her mother's boyfriend and he had performed oral sex on her. She testified that her partner called into the Special Victims unit, which instructed her partner to bring all parties to the unit. Fuller testified that when she was talking to K.G. upstairs in the house, her partner, Sergeant Jeremy Brosius ("Brosius"), showed K.G. Defendant's driver's license to confirm the identity of the person who assaulted her. (N.T. 11/2/2012, p. 15-21).

Fuller testified that they next went to the Defendant who was in the rear of the property on his cell phone. After they asked Defendant to hang up his cell phone and he did not, she and

6

Brosius put Defendant on the brick wall and Brosius patted Defendant down. Fuller testified that she tried to put her cuffs onto Defendants hands, but that he was "tensed up." She testified that they all started to fight and that Brosius took out his ASP[1] stick and started to hit Defendant on the leg while asking Defendant to put his hands behind his back. She stated Defendant would not comply, despite being struck multiple times. She testified that she eventually put her cuffs into her pocket and also hit Defendant with her stick. She stated that she then used a red button on her radio to call for back up assistance from other police officers. Fuller testified that the red button is used in situations where there are out of control fights. She stated that the use of her stick did not cause Defendant to stop fighting. Fuller testified that she also heard a clicking noise coming from the Defendant that was later determined to be the stun gun or taser he had in his pocket. She testified that only when other police officers responded to the radio call and assisted, were they able to get Defendant into custody. Id. at 21-27.

Fuller began to testify to what a couple of men outside of the rear of the property said to the Defendant during the fight when defense counsel objected on hearsay grounds. This Court ruled that the statements were admissible under the excited utterance and present sense impression exceptions to the hearsay rule and the objection was overruled. Officer Fuller testified that she remembered a group of guys standing along the side of the backyard yelling, "Stop fighting, just let them put cuffs on, stop fighting." Officer Fuller testified that the fight was more towards Brosius than it was towards herself, but that she did injure her right hand as a result of the Asp sticks used. Id. at 27-30.

The Commonwealth then called its next witness, Sergeant Jeremy Brosius ("Brosius"). Brosius testified that on October 16, 2009, his tour of duty took him to 2250 South 72nd Street. He stated that he arrived at that location because of a radio call for a domestic disturbance.

---

[1] Armament Systems and Procedures Baton

7

When he and his partner arrived, they saw a male at the front door who allowed them inside. He told them that his sister was touched and that the man who touched her was by the back door. Brosius asked Fuller to go speak with the victim while he went to the back of the house. He asked the Defendant for his ID, which he then took to Fuller and the victim. Brosius testified that he asked the victim for the name of the person who touched her and verified his identity with Defendant's ID. Brosius testified that he then called the Special Victims Unit and spoke with Detective Carrisquillo. Brosius stated that he and his partner decided to take Defendant into custody and bring everyone to the Special Victims Unit. Id. at 66-69.

Brosius testified that he and Fuller went to the back door and found Defendant standing outside and told him that he had to come with them. He testified that when Fuller went to grab Defendant's hand, Defendant said, "Get the fuck off of me." Brosius testified that he then went to the side of Defendant at the same as Fuller to grab the other hand and bring him to a wall. Brosius stated that he did a brief frisk of Defendant during which, Defendant flexed his arms so that he could not bring them back. Brosius told Defendant that he needed to stop resisting and the Defendant refused to be put into custody. At this point, Brosius took out his Asp stick, extended it and told Defendant, "You need to put your hands behind your back and stop." Brosius testified that he then struck Defendant on the leg once and said, "Put your hands behind your back." Brosius stated that Defendant refused to put his hands behind his back and was still "tensing up." Brosius testified that he again struck Defendant with the stick and Defendant continued to not comply. Brosius testified that he told Fuller to call for an assist and to also get her stick out. Brosius told Defendant again to put his hands behind his back, which Defendant refused to do. Brosius testified that at one point, when he went to strike Defendant with the stick, Defendant grabbed the Asp stick and started pulling at it with one hand. Brosius stated

8

that while struggling over control of the Asp stick with Defendant, he noticed Defendant's right hand go into his pocket. He testified that he pulled the Asp stick from Defendant's hand, causing it to break away and he did not get to see what was in Defendant's pocket at that time. Id. at 69-71.

Brosius testified that when Defendant's hand was in his pocket, he heard a clicking noise, that he identified as the noise of a taser. Brosius testified that he pulled away at the sound of the taser to avoid being hit. Brosius testified that Defendant was pulling Brosius towards him when Defendant was grabbing the Asp stick with one hand, while using his other hand in his pocket to create the clicking noise. At that point, Brosius heard sirens arrive at the location and other officers arrived. With the additional officers, they were able to handcuff Defendant. Brosius testified that Defendant was then transported to the Special Victims Unit. After subduing Defendant and searching him more thoroughly, a small black taser was found in Defendant's pockets, which was then placed on a property receipt. Id. at 71-74.

The next day of trial, Commonwealth admitted documents into evidence and rested. The defense did not present any witnesses at trial. Defendant chose not to testify on his own behalf. At the conclusion of trial, the jury found Defendant guilty of unlawful contact with a minor and indecent assault of G.G. (CP-51-CR- 0013590-2009), indecent assault of K.G. (CP-51-CR-0013591-2009), resisting arrest and possessing a prohibited offensive weapon (CP-51-CR-0013595-2009).

9

## ISSUES

I.     WHETHER THE COURT ERRED IN DENYING DEFENDANT'S RULE 600(G) MOTION TO DISMISS.

II.     WHETHER THE COURT ERRED BY ADMITTING TESTIMONY FROM OFFICER FULLER REGARDING STATEMENTS OF MEN OBSERVING THE FIGHT THAT ENSUED DURING DEFENDANT'S ARREST.

III.     WHETHER THE EVIDENCE WAS SUFFICIENT TO CONVICT DEFENDANT OF RESISTING ARREST.

## DISCUSSION

I.     THE COURT DID NOT ERR IN DENYING DEFENDANT'S RULE 600(G) MOTION TO DISMISS BECAUSE DEFENDANT WAS NOT DENIED THE RIGHT TO A SPEEDY TRIAL.

Defendant was granted a trial within the time frame set forth in Pa.R.Crim.P. 600.

Under Pennsylvania law, trial in a court case in which "a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed". Pa.R.Crim.P. 600(A)(3). After 365 days and at any time before trial, Defendant or defendant's counsel must apply to the court for an order dismissing the charges with prejudice on the ground that this rule has been violated. Pa.R.Crim.P. 600(G). In considering Rule 600 challenges, the standard of review of a trial court's decision is whether the trial court abused its discretion. Commonwealth v. Booze, 947 A.2d 1287, 1289, 2008 PA Super 92 (*citing* Commonwealth v. Ramos, 936 A.2d 1097, 1100 (Pa.Super.2007); *citing* Commonwealth v. Hunt, 858 A.2d 1234, 1238-1239 (Pa.Super.2004)). An abuse of discretion is more than an error of judgment; "if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused." Id. at 1290. In evaluating a potential Rule 600 error by the trial court, appellate review

10

"is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court." Id. The facts must be viewed in the light most favorable to the prevailing party. Id.

The burden is on the Commonwealth, in the event of a speedy trial challenge, to show its due diligence in bringing the defendant to trial. Commonwealth v. Johnson, 2004 PA Super 155, 852 A.2d 351, 317 (Pa. Super. Ct. 2004). (citing Commonwealth v. McCutcheon, 339 Pa.Super. 8, 488 A.2d 281, 284 (1985) ). "Due diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." Commonwealth v. Selenski, 606 Pa. 51, 994 A.2d 1083, 1089 (2010). "The Commonwealth must, in the face of a Rule 600 violation, prove by a preponderance of evidence that it acted with due diligence throughout the proceedings, not just at the last listing before the amended run date and any listing thereafter to bring the case to trial." Commonwealth v. Kearse, 2005 PA Super 410, 890 A.2d 388, 393 (Pa. Super. Ct. 2005). In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. Commonwealth v. Hunt, 858 A.2d 1234, 1238 (Pa.Super.2004). However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth. Id. (quoting Commonwealth v. Aaron, 804 A.2d 39, 42 (Pa.Super.2002) (en banc)).

The role of judicial delay in a Court's determination of a 600(G) motion has been discussed thoroughly by the court in Commonwealth v. Preston, 904 A.2d 1 (2006). The Preston Court stated that judicial delay may justify postponing trial beyond the adjusted run date if the

11

Commonwealth was prepared to commence trial prior to the expiration of the mandatory period, but the court was unavailable because of "scheduling difficulties and the like." Id. at 14 (citing Commonwealth v. Crowley, 502 Pa. 393, 396, 466 A.2d 1009, 1011 (1983)). Relying on Commonwealth v. Crowley, 466 A.2d 1009 (1983), Preston reasoned that it would be "ill-advised" to require courts to continually arrange and rearrange their schedules to achieve a rigid accommodation of the deadlines imposed by Pennsylvania's "speedy trial" procedural rules. Id. The Court in Preston stated that "any such interpretation of Rules 600 or 1013 would require judges, prosecutors, and defense attorneys to be available at all times to try defendants whose adjusted run date is about to expire." Id. Furthermore, the procedural rules were designed to promote the administration of criminal justice within the context of the entire judicial system, "not to render that system hostage to its own closed logic." Id. Finally, the Preston court held that the Commonwealth acted with due diligence if, prior to the expiration of the adjusted run date, the prosecutor indicates readiness to try the case and requests the earliest possible trial date consistent with the municipal court's business. Preston. at 13. (citing Commonwealth v. Jones, 451 Pa. Super. 428, 431, 679 A.2d 1297, 1299 (1996)).

In the case at bar, the Commonwealth exercised due diligence in bringing the Defendant to trial in light of this Court's congested trial docket. This Court held a 600(G) motion hearing on June 7, 2012. During the hearing, and in prior defense counsel's 600(G) motion, it was established that the sum of the time attributable to the defense was 502 days. The date of the filing of a complaint against Defendant in this case was October 17, 2009. Accordingly, Defendant's run-date was adjusted to March 2, 2012, taking the 502 days into consideration. The next date this case came before this Court before the adjusted run-date was December 13, 2011.

12

On December 13, 2011, this Court was already on a jury trial in another matter. This Court informed the Commonwealth and defense counsel that the next available jury trial date in the room was April 23, 2012. (N.T. 12/13/2011, p. 3). The attorney for the Commonwealth then requested a firm date and a **priority** for this case because it would require four to five days of trial and had three transcripts. Id. at 3-4. Defense counsel requested that the case be sent to another judge that same day. This Court investigated availability of another room and informed the attorneys that it would be difficult to find a courtroom that could take such a case, but that there would be calls made to see if a room was available, which there was not. Thus, the Commonwealth requested this case be given priority and a firm date and exercised due diligence by doing so.

Subsequently, on April 23, 2012, the Commonwealth attorney was finishing up a trial in another room, so the matter was continued to April 24, 2012. On April 24, 2012, the Court conducted a non-jury trial in another matter and was on scheduled vacation for the rest of the week. Therefore, the trial in this case was continued to August 6, 2012, as that was the next available date this Court could hear the jury trial. The 600(G) motion hearing was continued from April 24, 2012 to May 7, 2012, as the Commonwealth's attorney needed time to prepare for the motion. On May 7, 2012, the Court was again on jury trial and the motion hearing was continued to June 7, 2012. Thus, after this Court selected the trial date of August 6, 2012 due to this Court's schedule, the only time that was attributable to the Commonwealth was the one day from April 23, 2012 to April 24, 2012, which amounts to de minimus delay.

During the 600(G) motion hearing, defense counsel argued that pursuant to the holding of Commonwealth v. Johnson, 852 A.2d 315 (2004), the Commonwealth's attorney in the case at bar was not duly diligent. However, a closer examination of the facts of that case differentiate it

13

from the case at bar. In Johnson, the Superior Court held that the burden was on the Commonwealth to establish that due diligence was exercised and in that case, the Commonwealth failed to come up with any evidence. Id. at 318. The evidence the Johnson court required would show that the Commonwealth's attorney informed the **scheduling** Court that the case had 600(G) issues and needed the next earliest possible date. Id. Further, Johnson stated that the "quarter sessions file offer[ed] the Commonwealth no comfort" because there was no "EPD" or "earliest possible date" listed, nor was there a transcript showing that the Commonwealth made it clear to the Court that this case needed a priority. Id. at 317.

Johnson is significantly different from the case at bar. In Johnson, the Court which addressed scheduling issues was just a scheduling room. In our case, the Court was required to schedule and try all cases assigned. Therefore, this Court had a full trial docket itself, which was not an issue in Johnson. Furthermore, Commonwealth's request for a priority listing was made on December 13, 2011, 68 days before the March 2, 2012 run-date and thereafter, any delay was due to this Court being on trial. Thus, Preston, is more relevant to the case at bar. The judicial delay in the case at bar was due to the trial Court's congested docket of other trials,[2] which pushed this case out to a later date. It was not the fault of the Commonwealth's attorney that this Court was on trial at various listings for this case. Further, the Commonwealth requested a priority for this case well before the run-date passed, which constituted due diligence on the part of Commonwealth. As discussed above, to require this Court and others to rearrange congested trial dockets to accommodate deadlines imposed by rule 600 would be ill-advised and would interfere with the promotion of criminal justice within the context of the entire judicial system.

---

[2] Between December 13, 2011 to June 1, 2012, this Court heard the following jury trials: Commonwealth v. LaLonde, Commonwealth v. Franklin Respes, Commonwealth v. Shireff Whitmore, Commonwealth v. John Kahl, Commonwealth v. Fred Donahue, Commonwealth v. Hassan Mikell and Commonwealth v. Charles Finch, in addition to other matters.

14

For all of the foregoing reasons, this Court properly denied defense counsel's 600(G) Motion to Dismiss and this decision should not be disturbed on appeal.

## II. THE COURT DID NOT ERR IN ALLOWING THE TESTIMONY OF OFFICER FULLER TO INCLUDE OUT OF COURT STATEMENTS BECAUSE THEY FELL UNDER THE EXCITED UTTERANCE AND PRESENT SENSE IMPRESSION EXCEPTIONS TO THE HEARSAY RULE.

### A. The trial court properly allowed Officer Fuller to testify regarding statements made by men observing the arrest of the Defendant under the excited utterance exception to the hearsay rule.

This Court properly permitted Officer Naimbi Fuller to testify regarding statements made by men observing the arrest of Defendant because these statements fell under the excited utterance and present sense exceptions to the hearsay rule. A trial court's rulings on evidentiary questions are controlled by the discretion of the trial court and will not be reversed absent a clear abuse of that discretion. Commonwealth v. Jones, 590 Pa. 202, 225, 912 A.2d 268, 281-282 (2006) (citing Commonwealth v. Cargo, 498 Pa. 5, 444 A.2d 639, 644 (1982)). According to Pa. R.E. § 801(c), hearsay is "a statement, other than one made by the declarant testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is *per se* inadmissible except as provided in the Pennsylvania Rules of Evidence[,] by other rules prescribed by the Pennsylvania Supreme Court, or by Statute." Commonwealth v. Cunningham, 2002 PA Super. 249, 805 A.2d 566, 572 (2002) (citing Pa. R.E. § 802; Commonwealth v. Smith, 523 Pa. 577, 568 A.2d 600, 607-608 (1989)). Pennsylvania Rule of Evidence § 803(2) provides an exception to the hearsay rule and permits the admission of an "excited utterance," even if the declarant is available to testify. A statement meets the requirement of this hearsay exception if it is:

> A spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking

occurrence, which that person had just participated in or *closely witnessed*, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of it having emanated in whole or in part from his reflective faculties.

Jones, 590 Pa. at 225, 912 A.2d at 282 (quoting Commonwealth v. Stokes, 532 Pa. 242, 615 A.2d 704, 712 (1992)). An excited utterance need not describe the event, it must only *relate* to it. Commonwealth v. Hood, 2006 PA Super. 93, 872 A.2d 175, 181 (2005) (quoting Pa. R.E. 803(2) Comment-1998) (emphasis in the original). In addition, there is no clearly defined limit as to the time sequence required for a statement to qualify as an excited utterance; instead, a fact-specific inquiry is made for each case to determine whether the utterance and the event are in close enough proximity. Jones, 590 Pa. at 225, 912 A.2d at 282 (citing Commonwealth v. Boczkowski, 577 Pa. 421, 846 A.2d 75, 95-96 (2004)). When determining whether a statement offered is in fact an excited utterance, the trial court must consider "among other things, whether the statement was in narrative form, the elapsed time between the startling event and the declaration, whether the declarant had the opportunity to speak with others and whether, in fact, she did so." Commonwealth v. Gray, 2005 PA Super. 22, 867 A.2d 560, 570 (2005) (quoting Commonwealth v. Carmody, 2002 PA Super 151, 799 A.2d 143 (2002)). The critical inquiry must be "whether, at the time the statement is made, the nervous excitement continues to dominate while the reflexive processes remain in abeyance." Gray, 867 A.2d at 570 (citing Commonwealth v. Pronkoskie, 477 Pa. 132, 383 A.2d 858, 862-63 (1978)).

The present sense impression exception to the hearsay rule permits testimony of declarations concerning conditions or non-exciting events observed by the declarant. Commonwealth v. Cunningham, 2002 PA Super 249, 805 A.2d 566, 573 (Pa. Super. Ct. 2002) (citing Commonwealth v. Harper, 419 Pa.Super. 1, 614 A.2d 1180, 1183 (1992), appeal denied,

16

533 Pa. 649, 624 A.2d 109 (1993)). Present sense impression is defined as "a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Id. Furthermore, the "declarant need not be excited or otherwise emotionally affected by the event or condition perceived." Commonwealth v. Stephens, 2013 PA Super 181, 74 A.3d 1034, 1037 (Pa. Super. Ct. 2013) (citing Comment to Pa.R.E. 803(1)). "The trustworthiness of the statement arises from its timing. The requirement of contemporaneousness, or near contemporaneousness, reduces the chance of premeditated prevarication or loss of memory." Id.

In the case at bar, this Court properly allowed Officer Fuller to testify regarding statements made by men observing the attempt by the police officers to arrest Defendant because these statements fell under the excited utterance exception to the hearsay rule. Before the alleged hearsay statements were admitted, Fuller testified that a fight ensued while police were trying to arrest Defendant in the rear of the property of Guess. Fuller stated that she and Brosius began to fight with Defendant while trying to arrest him, which included hitting Defendant with the ASP stick multiple times. The declarants observed what was an unexpected and shocking occurrence, with little time to confer with anyone when they said, 'Man, stop fighting' and "let them put the cuffs on." These statements were clearly made in direct reaction to the scene witnessed and thus constituted an excited utterance exception to the hearsay rule.

In addition, this Court properly allowed the statements of the men observing the arrest because they also constituted a present sense impression exception to the hearsay rule. The declarants were immediately perceiving the arrest of Defendant and commenting on Defendant fighting with two police officers. As testified to by Officer Fuller, the declarants were speaking at the same time the fighting was occurring, thus fulfilling the contemporaneousness requirement

17

of the present sense impression exception to the hearsay rule. As discussed above, the fight between the police officers and Defendant was an exciting event, but even if it was not considered to be exciting or one causing the declarants nervous excitement, the present sense impression exception still applies to the out of court statements. Therefore, this Court committed no error in admitting the statements into evidence and this Court's decision should not be disturbed on appeal.

**B. Even if the statements of the men were inadmissible hearsay, this constituted harmless error and does not merit reversal.**

Even if hearsay evidence is improperly admitted, an appellate court will not reverse where the error was harmless. Commonwealth v. Gray, 2005 PA Super. 22, 867 A.2d 560, 571 (2005). Harmless error exists where:

> (1) the error did not prejudice the defendant or the prejudice was de minimus; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

Commonwealth v. Stallworth, 566 Pa. 349, 366, 781 A.2d 110, 120 (2001) (quoting Commonwealth v. Robinson, 554 Pa. 293, 7121 A.2d 344, 350 (1999)).

The out of court statements in question were, "Stop fighting, just let them put the cuffs on." However, Fuller and Brosius both described Defendant's behavior during the arrest as refusing to comply with their orders. Thus, when the jury found Defendant guilty of resisting arrest, this decision was supported by evidence of the two arresting officers, both of whom defense counsel had ample opportunity to cross examine. The statements of the men were, therefore, merely cumulative to the untainted evidence from the police officers. Moreover, the out of court statements did not contradict other

18

properly admitted evidence and did not prejudice Defendant in any way. Therefore, the admission of the statements, even if in error, was harmless.

## III. THERE WAS SUFFICIENT EVIDENCE TO CONVICT DEFENDANT OF RESISTING ARREST.

The evidence received at trial was sufficient to support finding Defendant guilty of resisting arrest. A review of the sufficiency of the evidence to support a conviction requires that the evidence be reviewed in the light most favorable to the Commonwealth as verdict winner. Commonwealth v. Walter, 2004 PA Super. 147, 849 A.2d 265, 267 (2004) (citing Commonwealth v. Rose, 463 Pa. Super. 264, 344 A.2d 824, 825 (1975)). The Commonwealth is also entitled to all favorable inferences which may be drawn from the evidence. Commonwealth v. Sanchez, 2006 Pa. LEXIS 1833 (2006) (citing Commonwealth v. Collins, 550 Pa. 46, 50, 703 A.2d 418, 420 (1997)). The evidence put forth by the Commonwealth will be considered sufficient if it establishes each material element of the crime beyond a reasonable doubt, even if by wholly circumstantial evidence. Commonwealth v. Dargan, 2006 PA Super. 74, 897 A.2d 496, 503 (2006) (citing Commonwealth v. DiStefano, 2001 PA Super 238, 782 A.2d 574, 582 (2001)).

When determining whether the evidence is sufficient to support a guilty verdict, the appellate court must examine the entire trial record and consider all of the evidence actually received. Id. However, the trier of fact is entitled to believe all, part or none of the evidence received at trial and the appellate court cannot substitute its judgment for that of the fact-finder. Commonwealth v. Frisbie, 2006 PA Super. 430, 889 A.2d 1271, 1274 (2006) (citing DiStefano, 782 A.2d at 574); Commonwealth v. Kim, 2005 PA Super. 383, 888 A.2d 847, 851 (2005) (citing Commonwealth v. Champney, 574 Pa. 435, 832 A.2d 403, 408 (2003)). The facts and

19

circumstances established by the Commonwealth need not eliminate any possibility of the defendant's innocence; rather, any doubt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact could be concluded. Commonwealth v. Lambert, 2002 PA Super. 82, 795 A.2d 1010 (2002) (citing Commonwealth v. Cassidy, 447 Pa. Super. 192, 194, 668 A.2d 1143, 1144 (1995)).

Under Pennsylvania law, a person is guilty of resisting arrest if, "with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S. § 5104 (2006). The statute does not require that the defendant strike or kick the officer. Commonwealth v. Miller, 327 Pa. Super. 154, 156, 475 A.2d 145, 146 (1984). Nor does the statute require that the officer sustain bodily injury. Commonwealth v. Butler, 354 Pa. Super. 533, 544-45, 512 A.2d 667, 673 (1986). Rather, the Commonwealth must provide proof that the defendant resisted by conduct that either created a "substantial risk of physical injury" or justified the use of "substantial force to overcome the resistance." Miller, 327 Pa. Super. at 156, 475 A.2d at 146. A defendant's passive resistance that required police to use substantial force to arrest her was sufficient to sustain a conviction for resisting arrest. Commonwealth v. McDonald, 2011 PA Super 77, 17 A.3d 1282, 1285 (Pa. Super. Ct. 2011)(citing Commonwealth v. Thompson, 922 A.2d 926, 928 (Pa.Super.2007)).

In the case at bar, Defendant resisted arrest by conduct that required the use of "substantial force to overcome the resistance" and he did so with the intent of preventing the police from discharging their duties. After Fuller and Brosius put Defendant on the brick wall to begin cuffing him, Defendant flexed his arms to make it difficult to bring his arms behind his

20

body to cuff him. Brosius repeatedly told Defendant to stop flexing and to put his hands behind his back, which Defendant refused to do. Both officers hit Defendant with their sticks to subdue him and they were still unable to cuff Defendant because of Defendant's efforts to not be restrained. Defendant also grabbed the Asp stick from Brosius and tried pulling it away from Brosius. Furthermore, additional officers had to be summoned to the location before Defendant was capable of being restrained and arrested. The record unambiguously demonstrates that Defendant intended to prevent the police from arresting him by conduct that justified the use of "substantial force" to overcome his resistance.

Furthermore, Defendant created a "substantial risk of physical injury" to a public servant when he attempted to use the taser that was in his pocket against the police officers. According to the testimony of Brosius, while Defendant held onto the Brosius' Asp stick, Defendant went into his right pocket and Brosius immediately heard a clicking noise that he identified as that of a taser gun. Later, after Defendant arrested and searched, a black taser was indeed recovered from Defendant's pocket. Not only was Defendant's attempt to take control of Brosius' stick and pull Brosius towards him, a source of "substantial risk of physical injury" to Brosius and Fuller, but had the taser in Defendant's pocket touched Brosius or Fuller, he actually would have caused some injury. Thus, the evidence was sufficient for the jury to convict Defendant of resisting arrest and this decision should be affirmed by the Superior Court.

21

## CONCLUSION

After reviewing the applicable testimony, case law, and statutes, this Court committed no error. This Court properly denied Defendant's Rule 600(G) motion. In addition, this Court properly allowed Officer Fuller to testify to statements made by men observing Defendant's arrest as they constituted excited utterance and present sense impression exceptions to the hearsay rule. Finally, there was sufficient evidence to convict Defendant of resisting arrest. Accordingly, this Court's judgment of sentence should be affirmed.

BY THE COURT:

_____ J.

22