J-A01031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
:          PENNSYLVANIA
       Appellant     :
:
:
:
       v.            :
:
:
:
AKEEM HAYDEN          :  No. 431 EDA 2023

Appeal from the Order Dated January 30, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005339-2022

BEFORE: LAZARUS, P.J., PANELLA, P.J.E, and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:          **FILED APRIL 15, 2024**

The Commonwealth appeals from an order of the Court of Common Pleas of Philadelphia County dismissing the charges of Driving Under the Influence ("DUI") and Driving While Operating Privileges Suspended ("DUS")[1] pursuant to Pennsylvania Rule of Criminal Procedure 600 ("Rule 600"). After careful review, we affirm.

On December 17, 2021, at 10:22 p.m., Appellee, Akeem Hayden, was in the driver's seat of his Mitsubishi SUV stopped in a driving lane at the intersection of 40th and Spring Garden Streets in Philadelphia. Officer Natalie Biondo saw that the SUV was impeding traffic, as several cars had to go into the opposite driving lane to get around it. Officer Biondo turned on her siren

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. §§ 3802(A)(1) and 1543(A), respectively.

to get the driver to move the car. There was no response. She exited her patrol car to check on the well-being of the driver. Appellee was passed out in the car, with the engine running. Officer Biondo could not arouse him, either by speaking to him or shaking him. There was an open can of beer in the center console. EMTs arrived, who were successful in waking Appellee. The odor of alcohol emanated from his breath when he spoke. When appellee refused to go to the hospital, he was arrested and taken to the Police Detention Unit. There, AID Officer Jamanda Beard-Smith attempted to test Appellee, but he refused. Appellee's certified driving history demonstrated that at the time of his arrest, his license had been suspended due to prior DUI convictions. N.T. 6/17/22 – Municipal Court Trial, 6-10, 13-17, 18, 21.

On June 17, 2022, the Honorable Marvin L. Williams of the Municipal Court of Philadelphia found Appellee guilty of DUI and DUS. He imposed a term of six months' reporting probation and fined Appellee. On July 19, 2022, the same day that he was sentenced, Appellee filed a timely appeal for a trial *de novo* in the Court of Common Pleas. **See** Pa.R.Crim.P. 1006(A)(1).[2]

---

[2] A defendant convicted in Philadelphia's Municipal Court has two options for appeal to the Philadelphia County Court of Common Pleas: trial *de novo* or petition for a writ of certiorari. **See Commonwealth v. Beaufort**, 112 A.3d 1267, 1269 (Pa. Super. 2015). "A trial *de novo* gives the defendant a new trial without reference to the Municipal Court record; a petition for writ of certiorari asks the Common Pleas Court to review the record made in the Municipal Court." **Id**.

Following the appeal, court administration scheduled the following pre-trial proceedings. Two weeks after the filing of the appeal, on August 2, 2022, Appellee's formal arraignment was scheduled and held.

On October 3, 2022, the first and only status listing was scheduled and held. At the status listing, the defense requested a Form 229 that had not been produced in discovery. The form is usually prepared by an arresting officer, and generally repeats the incident information from a different form – which had been produced in this case – along with biographical information for the arrestee and contact information for witnesses, if any. Appellee did not know if a Form 229 had been prepared in this case. The Assistant District Attorney who had handled the Municipal Court trial informed the trial court that Officer Beard-Smith had said there was no Form 229, but that Officer Biondo had "indicated there possibly may be," and so she would investigate. The trial court responded, "ok, just notify defense counsel." N.T. 10/3/22 – Status Listing, 3.

On January 23, 2023, the first and only pretrial conference was held. The defense attorney stated that the Form 229 requested at the last listing had not been produced, and "otherwise" the defense was ready for trial. A newly assigned Assistant District Attorney reported that the Commonwealth was ready for trial. With respect to the Form 229, she stated much the same information as had been forwarded at the October status listing, while claiming the police department was still trying to locate the form. She also suggested should the form not be located that it could be excluded from trial with a

negative inference drawn. Defense counsel agreed. The trial court ruled that the date for trial would remain, and if the Form 229 was not produced to the defense at least three days prior to trial, it would be excluded. N.T. 1/23/23 – Pre-Trial Conference, 4-5.

On January 30, 2023, the first trial date was reached. Defendant had filed a Motion to Dismiss pursuant to Rule 1013(G). The defense still had not been provided with the Form 229. The prosecutor reiterated the information from a week before, which she stated she had confirmed with the Municipal Court trial prosecutor. She then reiterated the prior agreement for the court to draw a negative inference from the lack of a Form 229, noting that in this instance it would only be duplicative of information produced to the defense. When the trial court sought clarification, the prosecutor asserted that the Form 229 did not exist, rather than being an extant document that had not been produced in discovery. N.T. 1/30/23, 4-6.

Following this discussion, the trial court held the Rule 1013(G) evidentiary hearing. Defense counsel acknowledged on the record that a Form 229 has "limited evidentiary value," but argued that the Commonwealth still had to produce it once it had been "ordered" to do so by the court. N.T. 1/30/23 – Motion, 9. Discovery sanctions such as drawing a negative inference were not an appropriate substitute for due diligence. *Id*. Further, the defense argued, the Commonwealth could not demonstrate due diligence because it had only to produce the Form 229 over several months and had failed to do so. *Id*., 10.

- 4 -

Believing that a Form 229 had been prepared in this case, the defense called Officer Biondo to testify. She was the first officer to come in contact with Appellee. N.T. 1/30/23 – Motion, 10. Officer Biondo, however, only stated that a Form 229 "should exist" and that the District Attorney's Office had not reached out to her to acquire any document. *Id.*, 11. Under cross-examination, she admitted that she does not keep all of her paperwork, and if she had prepared paperwork in connection with an arrest and was not the officer who transported the arrestee, then the paperwork she created would have been given to the officer transporting the arrestee. *Id.*, 12-13. Officer Biondo did not transport Appellee the night he was arrested. *Id.*, 12. When questioned by the court, Officer Biondo recalled creating some documents in connection with Appellee's arrest but did not have any specific recall on whether that included a Form 229. *Id.*, 13. It would not have been unusual for the transport officer to prepare a Form 229. *Id*.

After this testimony, the Commonwealth acknowledged that under ***Commonwealth v. Harth***, 252 A.3d 600 (Pa. 2021), it had to prove its due diligence through the entirety of the case before any delay caused by judicial scheduling could be considered. N.T. 1/30/23, 15. The trial court then walked the prosecutor through what had been done since the court "ordered the Commonwealth to produce [the Form 229] on a status date," and again "on the pretrial date." *Id.*, 20. The prosecutor explained that the trial court only orders police documents to be produced if the "actual piece of paperwork does exist," and then explained that the previously-assigned Assistant District

Attorney tried to determine whether the Form 229 existed, but could not do so. *Id.*, 21-22. The markings on the Commonwealth's trial file were entered into evidence to document that the court had been informed by each of the assigned prosecutors of their belief the document did not exist. *Id.*, 21. The Commonwealth then argued that judicial delay, not the Commonwealth, caused trial to be scheduled past the run date. *Id.*, 25-26. There had been no continuances, all of the "important" discovery had been produced and the 195-day period since the *de novo* trial appeal had been taken up by necessary proceedings – formal arraignment, status listing and pre-trial conference – dictated by judicial administration scheduling. *Id.*

Appellee's counsel argued that the Commonwealth failed to prove its due diligence, because it did not document any of the efforts made by the previously assigned prosecutor to determine if the Form 229 existed and Officer Biondi had testified that no one ever asked her about it. N.T. 1/30/23, 15, 26-27. In addition, Appellee's counsel argued that the Form 229 had become mandatory discovery once the trial court ordered it to be produced, at a minimum, placing an obligation on the Commonwealth to obtain it (or determine its non-existence) to demonstrate its due diligence. *Id.*, 28-29. Noting that the form might not be necessary, and while both the defense and Commonwealth might be able to go to trial without it, the Commonwealth had to prove its due diligence because the run period had expired. *Id.*, 30.

The trial court ruled that the Commonwealth had not demonstrated due diligence in the pre-trial period with respect to obtaining the document, which

the court had ordered to be produced if it existed. It noted that the Commonwealth did not provide dates, much less documentation, of when specific efforts were made by the assigned prosecutors. In particular, it stated that it wanted to hear from the previously assigned prosecutor, whom the present prosecutor alleged had made all of the efforts to locate the Form 229. The trial court noted that the only evidence presented established that the Commonwealth's search for the document did not extend to asking Officer Biondo about it, even though there was a court order for production of the form. The Commonwealth had five months to produce the form or determine it had never been created. It accomplished neither. The trial court granted Appellee's motion and dismissed the charges with prejudice. N.T. 1/30/23, 15, 27-31.

The Commonwealth filed a timely appeal.

The Statement of the Question Involved in the Commonwealth's brief is consistent with Rule 1925(b) Statement, and provides as follows:

> Did the lower court err in dismissing this case—in which the Commonwealth had been the verdict winner at defendant's trial in the Philadelphia Municipal Court—on prompt trial grounds under Pa. R. Crim. P. 1013, when the only instance in which the lower court found the Commonwealth not to have been duly diligent was its inability to produce a putative two-page arrestee biographical information form that was not in the Commonwealth's possession, that the Commonwealth determined after a reasonable investigation did not actually exist, and that the defense acknowledged almost certainly would have been insignificant even if it had existed?

Appellant's Brief, 4.

Our standard of review for a Rule 600 (prompt trial) claim is whether the trial court's ruling was an abuse of discretion:

> … Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.
>
> The proper scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.

***Commonwealth v. Carl***, 276 A.3d 743, 748 (Pa. Super. 2022) (cleaned up), ***appeal denied***, 292 A.3d 839 (Pa. 2023).

> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule [600]. Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

***Commonwealth v. Faison***, 297 A.3d 810, 821 (Pa. Super. 2023). ***See also Commonwealth v. Bradford***, 46 A.3d 693, 702 (Pa. 2012); ***Commonwealth v. Genovese***, 425 A.2d 367, 371 (Pa. 1981); ***Commonwealth v. Ramos***, 936 A.2d 1097, 1100 (Pa. Super. 2007) (*en banc*).

- 8 -

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule [600] must be construed in a manner consistent with society's right to punish and deter crime. In considering [these] matters ... courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Ramos*, 936 A.2d at 1100 (internal citations and quotation marks omitted);

*see also Commonwealth v. Hunt*, 858 A.2d 1234, 1238–1239 (Pa. Super.

2004) (*en banc*).

The Rule of Criminal Procedure governing the timing of a Municipal Court

trial provides that the Commonwealth must commence the trial *de novo* within

120 days of the filing of the notice of appeal. Pa.R.Crim.P. 1013(G). "In all

other respects the provisions of Rule 600 shall apply to such trials in the Court

of Common Pleas." *Id*.

If a defendant is not brought to trial within the required time, he "may file a written motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated." Pa.R.Crim.P. 600(D)(1). The trial court must then conduct a hearing on the motion. *Id.* Subsection (C) further provides that when computing time for Rule 600 purposes, "periods of delay at any stage of the proceeding caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of time within which trial must commence[, but a]ny other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1).

*Faison*, 297 A.3d at 821–22. This Court has held that a Rule 600 analysis

entails the following three steps:

First, Rule 600(A) provides the mechanical run date. Second, we determine whether any excludable time exists pursuant to Rule

600(C). We add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date.

If the trial takes place after the adjusted run date, we apply the due diligence analysis set forth in Rule 600([D]). As we have explained, Rule 600[] encompasses a wide variety of circumstances under which a period of delay was outside the control of the Commonwealth and not the result of the Commonwealth's lack of diligence. Any such period of delay results in an extension of the run date. Addition of any Rule 600[] extensions to the adjusted run date produces the final Rule 600 run date. If the Commonwealth does not bring the defendant to trial on or before the final run date, the trial court must dismiss the charges.

*Commonwealth v. Armstrong*, 74 A.3d 228, 236 (Pa. Super. 2013), *aff'd*, 107 A.3d 735 (Pa. 2014). *See also Carl*, 276 A.3d at 749; *Commonwealth v. Wendel*, 165 A.3d 952, 956–57 (Pa. Super. 2017) (citation omitted).[3]

Here, the notice of a trial *de novo* appeal was filed on July 19, 2022. The mechanical run date – 120 days later – was November 16, 2022. By that date, even though there had been no continuances, the Court of Common Pleas had held only the formal arraignment and status listing. The first trial

_____

[3] In 2013, former Rule 600 "was rescinded and new Rule 600 adopted to reorganize and clarify the provisions of the rule in view of the long line of cases that have construed the rule." Pa.R.Crim.P. 600, comment. As such, the three-step method to calculating the run period is correct, as it is based on the method used in the long line of cases. A plain reading of the rule would support calculating the run period by counting only includable days, those "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence." Pa.R.Crim.P. 600(C)(1). Doing so would avoid the need for steps one and two and having to convert the number of days into a date certain. A hearing would be necessary only if the number of includable days exceeded the total permitted in the rule. The result is the same using either method in this case.

- 10 -

date had been scheduled by court administration to be held on January 30, 2023, 195 days after the start of the run period.

As there was neither Commonwealth nor defense caused delay during the run period, the trial court went directly to an evidentiary hearing on whether the Commonwealth had been duly diligent throughout the entirety of the case since the filing of the appeal for a trial *de novo*. **Commonwealth v. Harth**, 252 A.3d 600, 617 (Pa. 2021) ("requiring the Commonwealth to demonstrate that it acted with due diligence before a trial court excludes time from its Rule 600 time computation on the basis of judicial delay").[4] Due diligence does not require perfect vigilance and punctilious care, only reasonable effort by the Commonwealth to bring defendant to trial in timely manner. **Commonwealth v. Hill**, 736 A.2d 578, 588 (Pa. 1999). It is fact-specific and must be determined on a case-by-case basis. **Id**.;

---

[4] The Pennsylvania Supreme Court stated in **Harth** that "requiring the Commonwealth" to prove its due diligence "before a trial court excludes time from its Rule 600 time computation on the basis of 'judicial delay' comports with the language of Rule 600(C)(1) and its commentary, the purpose behind the rule, and our prior jurisprudence[.]" **Id**. at 617. According to the comments to the rule, however, the inquiry for a judge is "whether the delay is caused solely by the Commonwealth when the Commonwealth has failed to exercise due diligence." Pa.R.Crim.P. 600, Cmt. The scheduling of necessary procedural events by court administration, without any postponement, is not delay caused solely by the Commonwealth. Nor would it be correct to say, as the trial court did, that "the Commonwealth *failed* to bring Appellee to trial before the adjusted run-date passed," Second Supplemental Opinion, 5 (emphasis supplied), because there was no opportunity to commence trial before the run date had passed, or even within thirty days of it. **See Commonwealth v. Preston**, 904 A.2d 1, 14 (Pa. Super. 2006) (*en banc*). Nevertheless, **Harth** controls our analysis.

*Commonwealth v. Aaron*, 804 A.2d 39, 43 (Pa. 2002). The proper focus is on what was done by the Commonwealth, not on what was not done. *Commonwealth v. Preston*, 901 A.2d 1, 12 (Pa. Super. 2006) (*en banc*); *Commonwealth v. Jones*, 886 A.2d 689, 701 (Pa. Super. 2005). The Commonwealth has the burden of proving its due diligence by a preponderance of the evidence. *Commonwealth v. Kearse*, 890 A.2d 388, 393 (Pa. Super. 2005); *Commonwealth v. Lewis*, 804 A.2d 671, 673 (Pa. Super. 2002).

Each of the assigned prosecutors assured the court on the record that they, or the police, would investigate the existence or location of the Form 229. N.T. 10/3/22, 3; N.T. 1/23/23, 4. Yet, the Commonwealth presented no evidence at the hearing that any additional investigation was conducted over the four months since the defense requested the document. *See Commonwealth v. Wallace*, 804 A.2d 675, 679-680 (Pa. Super. 2002) (to demonstrate due diligence with respect to a defense discovery request, the Commonwealth must make "reasonable efforts" but need not do so "to the defense's complete satisfaction").[5]  At the hearing, the trial court specifically noted that the Commonwealth did not present the previously assigned prosecutor, whom it was alleged had made the efforts to locate the document,

_____

[5] Notably, the defense request for the single document was made four months in advance of the trial date. This was not a situation where a late request by the defense for additional discovery caused trial to be postponed, in which case exclusion of the resulting delay would be proper. *See Commonwealth v. Andrews*, 213 A.3d 1004, 1013 (Pa. Super. 2019).

nor did it provide dates, much less documentation, of when those specific efforts were made. It ruled that the Commonwealth had not demonstrated its diligence with respect to discovery. In light of the burden of proof and standard of review, we find the trial court's conclusion was supported by the record and sufficient to dismiss the charges.

The only statement supporting that any investigation had been done was the hearsay report by the assigned trial prosecutor about what the previously assigned prosecutor had told her she had done, which amounted to phone calls to the police department that were not returned. N.T. 1/30/23, 27-28. The lower court was entitled to reject that meager assertion. *Commonwealth v. Johnson*, 852 A.2d 315, 317-318 (Pa. 2004) (unsworn statements by counsel are not enough to prove diligence). A fair reading of the record, in the light most favorable to the Appellee as the motion winner, supports the conclusion that the assigned prosecutors made little or no effort from the status listing through the day of trial. At most, the originally assigned prosecutor made one or two calls to the police but did not follow up. That was not a reasonable effort to produce a document the trial court had ordered the Commonwealth to either produce or determine did not exist.[6]

_____

[6] We note that the trial court stated it had ordered the document be produced in discovery if it existed and the Commonwealth did not object to that representation. N.T. 1/30/23, 20, 30. **See also** Second Supplementary Opinion, 2. Our review of the record discerns no clear order to that effect. Rather, defense counsel noted that the Form 229 had not been produced but might not exist, and the prosecutor, who handled the trial in Municipal Court
*(Footnote Continued Next Page)*

The Commonwealth argues that the trial court erred by ruling it lacked diligence by failing to produce a two-page biographical information form that, to the best of its ability to determine did not actually exist and the defense acknowledged would almost surely lack significance if it did exist. Appellant's Brief, 14. In light of the standard of review, we are unpersuaded. We note further that the Commonwealth is not being faulted for being unable to produce the document, but for not coming forward with any first-hand account or near contemporaneous documentation to support a finding that the prosecutor had made reasonable efforts to find the document or determine that it did not exist. *See Wallace*, 804 A.2d at 679-680. We doubt that the lack of this document was material to the defense.[7] However, we must rely on

---

stated she did not believe the form existed but would investigate further. N.T. 10/3/22, 3. In response, the trial court said "Okay. Just notify defense counsel." *Id*. With a neutral standard of review, we would not find that the trial court entered an order to produce the document, but rather only to tell counsel the result of an investigation into its existence. The standard of review, however, requires us to view the record in the light most favorable to the Appellee. *Carl*, 276 A.3d at 748. It may well be that this is the trial court's usual practice though it be opaque to a reviewing court, and all parties understood their obligations. The absence of an objection by the Commonwealth, at the very least, deprived us of a clear explanation. *See* Pa.R.A.P. 302(a) (providing that issues not raised in the lower court are waived and cannot be raised for the first time on appeal).

[7] Just as the Commonwealth failed to object to the existence of a discovery order, it failed to object to the materiality of Appellee's request, as the police form was subject to disclosure only on an order discretionary with the court. Pa.R.Crim.P. 573(B)(2)(a)(i); *Commonwealth v. Garcia*, 72 A.3d 681, 684 (Pa. Super. 2013). In explaining why the Form 229 would be material, even though it had "limited evidentiary value," defense counsel stated "in a 229 they [a police officer] typically asks people what their jobs are, where they're

*(Footnote Continued Next Page)*

trial courts to exercise their discretion in entering clear discovery orders to avoid potential gamesmanship by the defense. The Commonwealth also argues that this was a discovery trap that bootstrapped an insignificant discovery issue into a discharge. Appellant's Brief, 15-16. If this was a trap, the Commonwealth walked into it unprepared. We can only suggest that it keep better records of efforts made to produce ordered discovery, which it may then proffer at a hearing to satisfy its burden of proof.

Pursuant to **Harth**, neither we nor the trial court may attribute to judicial delay the fact that court scheduling made it impossible to bring this matter to trial in a timely fashion without proof that the Commonwealth had been duly diligent. At the hearing, the Commonwealth offered no persuasive evidence that its representatives had actively investigated whether a particular document had been created in this case, even though agreeing it had been ordered to do so months earlier. Because the Commonwealth failed to demonstrate that it made reasonable efforts to produce the ordered document, it did not prove its due diligence.

Order affirmed.

---

living. If a person is so intoxicated they can't even provide those answers, that might be relevant evidence for the defense." N.T. 1/30/23. We discern no helpful evidence for the defense in this hypothetical, as Appellee was charged with a crime where intoxication was an element.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>4/15/2024</u>